[No. 347-41683-3.    Division Three.    December 21, 1971.]

JOSEPH G. DOBIAS *et al., Respondents,* v. WESTERN FARMERS ASSOCIATION *et al., Appellants.*

*Rutherford, Kargianis & Austin* and *Don M. Gulliford,* for appellant Western Farmers Association.

*Palmer, Willis, McArdle & Meyer* and *Robert J. Willis,* for appellant Stauffer Chemical Company, Inc.

*Ries & Kenison* and *Darrell E. Ries,* for respondents.

EVANS, J.—This is an appeal from judgment for plaintiffs against defendants Western Farmers Association and Stauffer Chemical Company, Inc. in an action to recover damages for partial loss of a corn crop, and also an appeal by Western Farmers from dismissal of its cross claim for indemnity against codefendant Stauffer Chemical Company.

Plaintiffs Dobias and Fisher are partners in a farming operation located near Moses Lake, Washington. In 1967 they farmed units 190, 191 and 123, irrigation block 42. The north boundary of unit 191 abutted the south boundary of unit 190 and a portion of the north boundary of 190 abutted the south portion of unit 123. Prior to planting in 1967 plaintiffs contracted with Umatilla Canning Company to grow "Jubilee" sweet corn for processing and freezing. Forty acres were to be planted in unit 123, 58.6 acres in unit 190, and 17 acres in unit 191. In 1966 plaintiffs had experienced weed control problems on farm units 190 and 191. Prior to the 1967 planting, plaintiff Dobias consulted with a representative of Western Farmers concerning the use of a herbicide to control weeds. Their salesman advised the use of the herbicide Eptam, manufactured by codefendant Stauffer Chemical Company. In recommending the use

of Eptam, Western Farmers' salesman relied on the label on the container and on statements made by Stauffer's representatives as to the effectiveness of the chemical in weed control and its compatibility with corn. Following the recommendation of Western Farmers' representative, plaintiffs purchased a quantity of Eptam, applied it to the soil on farm units 190 and 191 in a proper manner, but made no application to farm unit 123. As the corn on farm units 190 and 191 emerged, the plants were visibly stunted and twisted. Later, the corn on these units became infested with a parasitic disease known as common smut. The corn on adjoining unit 123, which was of like variety, planted at approximately the same time, and to which no Eptam was applied, had no twisted or stunted plants, nor was it affected to any appreciable degree by common smut. As the corn on units 190 and 191 developed, the stunting and twisting worsened and the corn grew in a grotesque fashion. Umatilla Canning Company subsequently rejected plaintiffs' corn crop grown on units 190 and 191 because the high incidence of smut rendered it impossible to process. The harvest of sweet corn on unit 123 yielded 7.8 tons per acre and the plaintiffs received $25 per ton plus a patronage dividend of 14 per cent. The 58.6 acres of corn on unit 190 were sold for silage at $3,119, and the 17 acres on unit 191 were a total loss.

The trial court found that the 75.6 acres to which Eptam was applied, assuming a yield similar to unit 123, of 7.8 tons per acre, would have brought $14,742, plus the 14 per cent patronage dividend. Plaintiffs recouped $3,119 from the 75.6 acres, for a loss of $11,622 plus the patronage dividend. The court found that approximately 15 per cent damage was to be expected from the use of the herbicide, which nearly offsets the patronage dividend, and granted judgment against both defendants in the sum of $11,262.

█ Western Farmers' first assignment of error is directed to the refusal of the trial court to dismiss at the conclusion of plaintiffs' case, contending that plaintiffs' complaint is based upon alleged fraud which plaintiffs

failed to prove. While the plaintiffs' complaint sounds in fraud in that it alleges a knowingly false representation upon which plaintiffs relied, the record discloses that all parties considered this an action based either on fraud, warranty or negligence. The complaint met the requirements of CR 8 of the rules for superior court in that it contained a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled. The trial court's judgment may be sustained on any theory of law established by the pleadings and supported by the proof. *State ex rel. Weiks v. Tumwater*, 66 Wn.2d 33, 400 P.2d 789 (1965); *Lundberg v. Corporation of Catholic Archbishop*, 55 Wn.2d 77, 346 P.2d 164 (1959); see *Kirkland v. Steen*, 68 Wn.2d 804, 416 P.2d 80 (1966).

■ Both defendants assign error to the action of the trial court striking opinion portions of the deposition of Dr. Maloy, one of defendants' witnesses called as an expert in the field of plant diseases. The portion stricken primarily related to the nature and characteristics of the disease known as smut. An expert may state his opinion on a subject matter which is beyond the knowledge of the average layman, and within the realm of his expertise. 5 Meisenholder, Wash. Prac. § 351, p. 329 (1965). Dr. Maloy's credentials are impressive. However, by his own frank admission, his expertise did not extend to sweet corn. The qualification of an expert to give opinion testimony is a matter within the sound discretion of the trial court and its determination will not be disturbed unless that discretion is manifestly abused. *Duchsherer v. Northern Pac. Ry.*, 4 Wn. App. 291, 481 P.2d 929 (1971). Since Dr. Maloy testified that he had never before considered the cause and effect of smut on sweet corn, the trial court did not abuse its discretion in striking the opinion portions of his deposition.

■ Both defendants next assign error to the italicized portions of the following findings of fact and the conclusions of law based thereon:

## IX.

That on July 28, 1969, the parties (the plaintiffs and

representatives of Stauffer Chemical Company, Inc.) examined the corn crop on Farm Units 190 and 191, and at that time it was agreed upon by all parties that the crop on said Units was strictly a salvage matter; *that said condition of the corn crop was due to the unsuitability and unfitness of the chemical Eptam to be applied to said sweet corn crop and the damage resulting from the use thereof.*

### X.

That after July 28, 1969, the corn in Farm Units 190 and 191 became infested with smut, while the corn on Farm Unit 123 showed little smut, *but that the corn crop on Farm Units 190 and 191 was already lost prior to the onset of the smut and that the corn was made more susceptible to smut by the weakened conditions of the plants on Farm Units 190 and 191, said weakening was caused by the Eptam.*

Defendant Stauffer also assigns error to that portion of finding of fact 4, as follows:

### IV.

. . . and that the representatives of Western Farms Association and of Stauffer Chemical Company, Inc. had no real or reliable knowledge of the suitability of Eptam for use on Jubilee sweet corn in the Moses Lake, Washington area.

We have examined the record and while the evidence is in dispute we find substantial evidence to support the above findings of the trial court.

As stated by the court in *Stringfellow v. Stringfellow,* 56 Wn.2d 957, 959, 350 P.2d 1003, 1004, 353 P.2d 671 (1960):

Factual disputes are to be resolved by the trial court. The Washington constitution by Art. IV, § 6, vests that power exclusively in the trial court. The power of this court is appellate only, which does not include a retrial here but is limited to ascertaining whether the findings are supported by substantial evidence or not. If we were so disposed, but we are not, we are not authorized to substitute our judgment for that of the trial court.

The remaining question is whether the findings of fact support the conclusion of law that plaintiffs are entitled to judgment against both defendants.

As to Western Farmers, we hold the findings are suffi-

cient to hold them liable on the theory of implied warranty of fitness for a particular purpose. RCW 62A.2-315. There are two prerequisites to implied warranty of fitness. First, a buyer must make known to the seller expressly or by implication the particular purpose for which the article is required, and secondly, the buyer must rely on the seller's skill and judgment when he purchased the article. *Ringstad v. I. Magnin & Co.*, 39 Wn.2d 923, 239 P.2d 848 (1952); *Martin v. J. C. Penney Co.*, 50 Wn.2d 560, 313 P.2d 689, 80 A.L.R.2d 697 (1957); *Fossum v. Timber Structures, Inc.*, 54 Wn.2d 317, 341 P.2d 157 (1959). The trial court found that plaintiffs communicated to Western Farmers their need of a herbicide to control weeds on their corn lands. Plaintiffs had dealt with defendants for several years and had relied on their advice in the past. As stated in *Udell v. Rohm & Haas Co.*, 64 Wn.2d 441, 444, 392 P.2d 225 (1964):

> The growers rely heavily, perhaps conclusively, on the directions given. All parties, manufacturers, retailers and growers realize and intend that the counsels of the field representative be acted upon, and there is grave doubt that this flow of information to the mutual benefit of all is seriously hindered by the disclaimer clauses common in the industry.

■ As to the liability of Stauffer to plaintiffs, the facts show that plaintiffs purchased a product manufactured by the defendant Stauffer. Although the label on Eptam contained the usual disclaimer of any express or implied warranty of merchantability, Stauffer represented to its retailer, and through it to the plaintiffs, who relied upon that representation, that the product was compatible with corn. The court found that Stauffer had no real or reliable knowledge of the suitability of its product for use on sweet corn in the Moses Lake area. This is sufficient to hold the manufacturer liable to plaintiffs. *See Udell v. Rohm & Haas Co., supra.*

■■ Finally, defendant Western Farmers contends the trial court erred in denying its cross claim for indemnity against defendant Stauffer Chemical Company. The trial court found that Western Farmers, in advising the use of

Eptam to the plaintiffs, relied on the information furnished by Stauffer Chemical Company that Eptam was suitable for application to sweet corn in the Moses Lake area. The trial court, however, denied indemnity over against Stauffer Chemical because it found that Western Farmers Association had full knowledge of the disclaimer provisions under which the Eptam was sold to them by Stauffer Chemical Company. Knowledge of a disclaimer is not sufficient to give effect to that disclaimer so as to defeat an action for breach of warranty. A disclaimer to be effective must be bargained for. RCW 62A.2-316. *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960), *Berg v. Stromme*, 79 Wn.2d 184, 484 P.2d 380 (1971). Disclaimers of warranty are disfavored in the law and ineffectual unless explicitly negotiated between the buyer and seller, and set forth with particularity showing the particular qualities and characteristics of fitness which are being disclaimed. *Berg v. Stromme, supra.* In the instant case the alleged disclaimer was not part of the contract between Western Farmers and Stauffer, but was merely a caveat emptor proclamation contained on the label of the container. It was doubtlessly intended for the ultimate user of the product, who might be reasonably expected to suffer damage from its use. When a retailer incurs liability to the ultimate consumer by reason of his negligent reliance upon statements made by the manufacturer of a dangerous product, indemnity will lie. *See* Prosser, Law of Torts § 48, p. 280 (3d ed. 1964). Stauffer Chemical manufactured a product and represented to the retailer, as well as to the ultimate user, that it would be relatively safe to use on corn. Commercial expediency requires that the primary duty to test products lies with the manufacturer rather than the retailer, who is a mere conduit of the product. *Dipangrazio v. Salamonsen*, 64 Wn.2d 720, 393 P.2d 936 (1964), *Ringstad v. I. Magnin & Co., supra.* As Dean Prosser says:

Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify

will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than on the other.

Prosser, Law of Torts § 48, p. 281 (3d ed. 1964). Thus, between the retailer and the manufacturer, commercial expediency requires the manufacturer, whose duty is to market merchantable products, to exercise the necessary precautions so that the product, if properly used, will be safe. A retailer, with no duty to test the product, can only rely on statements made by the manufacturer. The trial court erred in denying Western Farmers' claim for indemnity against Stauffer.

Judgment affirmed in part and reversed in part.

MUNSON, C.J., and GREEN, J., concur.