[No. 2269-1.    Division One.    December 2, 1974.]

JOHN SCHROEDER, *Respondent*, v. FAGEOL MOTORS, INC., et al., *Appellants*.

162

*Ryan, Bushy, Swanson & Hendel* and *Bogle, Gates, Dobrin, Wakefield & Long,* for appellants.

*Davies, Pearson, Anderson, Gadbow & Hayes, P.S.,* and *John C. Kouklis,* for respondent.

JAMES, J.—This case concerns an aspect of the law of products liability not heretofore considered at the appellate level in Washington.

Plaintiff, John Schroeder, purchased a 1970 White freightliner truck from defendant, Fageol Motors. The truck was to be used to haul automobiles between California and Washington. It was Schroeder's normal practice to operate his trucks 24 hours a day.

Schroeder brought this action to recover damages which he incurred as a result of an engine failure. The engine had been manufactured by defendant, Cummins Engine Company, and installed in the truck by defendant, White Motor Corporation, the manufacturer of the truck.

Schroeder's complaint alleges that Fageol and White are liable because of "an absolute guarantee for One Hundred Thousand (100,000) miles as to the engine, power train and other major components." As to defendants Cummins Engine Company and Cummins Northwest Diesel, the complaint alleges liability for negligence in making repairs to the engine.

Prior to trial, Schroeder settled with defendants Cummins Northwest Diesel and White Motor Corporation for the sum of $4,000. The case was tried to the court.

The trial judge found that because of the engine failure, Schroeder sustained damages of $8,431.45 for out-of-pocket payments for repairs and $12,160 for lost profits while the truck was disabled. The $4,000 received from Cummins Northwest Diesel and White Motor Corporation was cred-

ited and judgment was entered against appellants Fageol Motors and Cummins Engine Company for $16,591.45.

The trial judge found that Fageol represented to Schroeder that it had repossessed the truck from its first purchaser; that the truck had been driven only 6,000 miles; and that a new truck warranty for the Cummins diesel engine would be in effect until the truck had been driven 100,000 miles. He further found that:

> Prior to the sale of the truck [Schroeder] was shown a warranty book which was later placed in the glove box of the truck following purchase, and [Schroeder] was told to keep the warranty book in the glove box.

Finding of fact No. 5. The 21-page "warranty" book is entitled "Owner Book" and on the inside of the cover page, the new truck owner is told that the book contains the "White Truck 'Comprehensive' New Truck Warranties."

It is undisputed that the truck performed normally for approximately 36,000 miles and that while being driven in a routine manner in the vicinity of Sacramento, California, the engine exploded. Schroeder called Fageol and was told to take the truck to the Cummins' San Francisco shop for repairs.

It is undisputed that Cummins determined that the cause of the engine failure was a casting defect in a piston rod cap. Cummins undertook the repair of the engine without cost to Schroeder except for normal maintenance items.

The trial judge found that the truck never performed properly after Cummins' first repair of the engine. Among many difficulties was a severe vibration problem. He found that Schroeder

> made numerous and repeated complaints to Cummins Engine Co., Inc. and to Fageol Motors, Inc. to repair the truck. The truck was returned to the shop of Fageol and to the shops of the agents of Cummins, and additional work was done on it, . . .

(Finding of fact No. 7.), but that the attempts at repair were unsuccessful.

The trial judge concluded that both Fageol and Cummins

were bound by an agreement to repair contained in the warranty book and that both had breached the agreement. He found that Schroeder's damages were the proximate result of the breach of the agreement to repair. By their assignments of error, Fageol and Cummins challenge the trial judge's conclusion as to liability and his findings as to damages. We find no error and affirm.

The agreement to repair the engine is contained in the "component" warranty for the Cummins diesel engine on page 11 of the "Owner Book." By that warranty,

> [t]he Seller warrants to the Purchaser that the Cummins Diesel engine (hereinafter called "engine") installed in, and so long as it remains in, the new truck will be free from defects in material, workmanship and title.

The "warranty" further provides that:

> If it appears . . . that the engine does not meet the warranty specified above . . . the Seller shall correct, or cause another to correct, any defect, at the Seller's option, either by repairing any defective part or by making available, at the Seller's factory or nearest Branch Office or nearest franchised Dealer, a repaired or replacement part; . . .

The warranty as to defects is followed by a disclaimer in bold print as follows:

> THE FOREGOING WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES WHETHER WRITTEN, OR ORAL OR IMPLIED (INCLUDING, BUT NOT LIMITED TO, A WARRANTY OF MERCHANTABILITY OR FITNESS FOR PURPOSE).

Concerning its liability, Cummins argues that the express agreement to repair was that of the seller, Fageol, and that Cummins was not bound thereby. Cummins' argument must be rejected. Cummins itself introduced a copy of a document entitled "Cummins Warranty" (Exhibit E). Its terms are substantially those of the engine warranty contained in the new truck warranty book delivered to Schroeder. A witness for Cummins testified that the Cummins warranty, which accompanied every engine which it manufactured, was for the benefit of the "end user."

■ The engine was warranted to be free of defects "for two years or 100,000 miles or 3,600 hours of *operation.*" (Italics ours.) Obviously, the warranty is for the benefit of the *operator.* Schroeder, the operator, was the "end user" and as such he was a third-party beneficiary of the "Cummins Warranty."

> A third-party beneficiary is one who, though not a party to the contract, will nevertheless receive direct benefits therefrom. In determining whether or not a third-party beneficiary status is created by a contract, the critical question is whether the benefits flow directly from the contract or whether they are merely incidental, indirect or consequential.

*McDonald Constr. Co. v. Murray,* 5 Wn. App. 68, 70, 485 P.2d 626 (1971). A third party for whose direct benefit a contract is intended may sue for the breach thereof. 17 Am. Jur. 2d *Contracts* § 305 (1964). *Accord, Jeffery v. Hanson,* 39 Wn.2d 855, 239 P.2d 346 (1952).

■ In any event, Cummins did initially honor the warranty that the engine would be free from defects in material and did undertake its repair. The trial judge's finding that the truck never thereafter performed satisfactorily is supported by substantial evidence. The trial judge did not err in concluding that the failure to repair was a breach of an express contractual agreement.

> An unsuccessful effort to remedy the defects renders the seller liable on his warranty; and the buyer is not bound to allow him a second opportunity, or to permit him to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty.

(Footnotes omitted.) 77 C.J.S. *Sales* § 340 (1952). *Accord, Beal v. General Motors Corp.,* 354 F. Supp. 423 (D. Del. 1973); *Jones & McKnight Corp. v. Birdsboro Corp.,* 320 F. Supp. 39 (N.D. Ill. 1970); *Seely v. White Motor Co.,* 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17 (1965); *Kaiser Cement & Gypsum Corp. v. Allis-Chalmers Mfg. Co.,* 35 Cal. App. 3d 948, 111 Cal. Rptr. 210 (1973); *Rose v. Chrysler Motors Corp.,* 212 Cal. App. 2d 755, 28 Cal. Rptr. 185, 99 A.L.R.2d

1411 (1963); *General Motors Corp. v. Earnest*, 279 Ala. 299, 184 So. 2d 811 (1966); *Allen v. Brown*, 181 Kan. 301, 310 P.2d 923 (1957); *Rice v. Chrysler Motors Corp.*, 198 N.W.2d 247 (N.D. 1972); *Steele v. J.I. Case Co.*, 197 Kan. 554, 419 P.2d 902 (1966); *Judd Constr. Co. v. Bob Post, Inc.*, 516 P.2d 449 (Colo. App. 1973); *Ford Motor Co. v. Gunn*, 123 Ga. App. 550, 181 S.E.2d 694 (1971); *Cox Motor Car Co. v. Castle*, 402 S.W.2d 429 (Ky. App. 1966).

Concerning its liability, Fageol first argues that the bold print disclaimer quoted above "evidences conspicuous writing sufficient to waive any implied warranties." The argument misconceives the basis of the trial judge's conclusion as to liability. The validity of the disclaimer of *implied* warranties is not in issue. As heretofore pointed out, the trial judge based his conclusion as to liability of both Cummins and Fageol upon his finding that each had breached the undisputed *express* contractual agreement to repair.

Fageol's second contention is that "the court erred in holding that Fageol had breached its warranties to Schroeder." Its argument is that:

> [It] did everything it could to correct the problems arising from the engine failure near Sacramento. In effect, the warranty from Fageol to Schroeder for the engine which was covered on page 11 of the Warranty Book was merely a Cummins warranty which Fageol was passing on to the purchaser (St. 344-346). When the Sacramento failure occurred, Cummins took the responsibility and sought to correct the problems under its warranty. Schroeder only came back to Fageol when told to do so by Cummins' warranty man who told him they would transfer the warranty up here. Fageol did not breach its warranty to Schroeder.

Again, this argument ignores Fageol's *express* agreement to repair.

■■ Concerning damages, Fageol contends that it was error to award consequential damages for lost profits. Fageol relies upon the final sentence of the "White Truck Comprehensive New Truck Warranty" found on page 3 of the "Owner Book": "In no event shall the Seller be liable

for special or consequential damages." Fageol argues that by the inclusion of the disclaimer in its warranty, it has effectively limited its liability in connection with engine repair and that such limitation of liability is permitted by RCW 62A.2-719(3):[1]

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

The trial judge concluded (though denominated a finding) that:

> The warranty book was ineffective as a disclaimer of liability or any particular limitation on the protection given the buyer in this transaction because it was not bargained for nor explicitly negotiated between the parties as required by Washington law.

Finding of fact No. 5. In his oral opinion, the trial judge stated that he based his conclusion upon *Berg v. Stromme*, 79 Wn.2d 184, 484 P.2d 380 (1971). *Berg* held that an implied warranty that a new automobile is of merchantable quality may not be disclaimed unless the seller sustains the burden of proving that the buyer's waiver was "explicitly negotiated between buyer and seller and set forth with particularity . . ." *Berg v. Stromme, supra* at 196. *Accord, Dobias v. Western Farmers Ass'n*, 6 Wn. App. 194, 491 P.2d 1346 (1971).

---

[1]RCW 62A.2-719(3) was amended by Laws of 1974, 1st Ex. Sess., ch. 180, p. 642 to read as follows:

"Limitation of consequential damages for injury to the person in the case of goods purchased primarily for personal, family or household use or of any services related thereto is invalid unless it is proved that the limitation is not unconscionable. Limitation of remedy to repair or replacement of defective parts or nonconforming goods is invalid in sales of goods primarily for personal, family or household use unless the manufacturer or seller maintains or provides within this state facilities adequate to provide reasonable and expeditious performance of repair or replacement obligations.

"Limitation of other consequential damages is valid unless it is established that the limitation is unconscionable."

The trial judge found as a fact that: "No discussions were had prior to purchase regarding any limitation or disclaimer of liability of warranty. . . ." Finding of fact No. 5. In his oral opinion, the trial judge elaborated upon this finding by pointing out that the record was silent as to any discussion concerning any limitation or disclaimer of warranty. The trial judge said:

> There was no showing of bargain here. The only thing the evidence disclosed, really, was that Mr. Schroeder checked to make sure the warranty would apply for another 94,000 miles and [Fageol's salesman] told him it would. Then he got the book. There's no showing that they sat down prior to the time he bought the truck and bargained for it or that it was negotiated between the buyer and seller, nor that it was set forth with particularity showing the particular qualification and characteristics of fitness which are being disclaimed. Just a complete absence of showing of any such burden which is on the seller. The seller said it didn't happen that way; they threw the book in the truck and [the salesman] told him "You better keep it in the glove compartment." and that's it.

The language of the disclaimer upon which Fageol relies is the last sentence of the "comprehensive" warranty. It is in fine print, as contrasted to a bold print general disclaimer in terms identical to the above quoted engine warranty disclaimer. In *Baker v. Seattle*, 79 Wn.2d 198, 484 P.2d 405 (1971), our Supreme Court, citing RCW 62A.2-316(2),[2] found that it would be unconscionable to permit the avoidance of liability for consequential damages by means of an inconspicuous "fine print" disclaimer in a golf cart rental agreement. Further, the "comprehensive" warranty expressly excepts the Cummins diesel engine which is covered by its own "component" warranty. The "component" warranty contains no disclaimer for special or consequen-

---

[2]"Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be *conspicuous*, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and *conspicuous*." (Italics ours.)

tial damages. The trial judge's finding is supported by substantial evidence and therefore may not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

■ Cummins does not contend that Schroeder waived his right to claim consequential damages but does argue that the trial judge's findings concerning lost profits are not supported by substantial evidence. We do not agree. While it is true, as Cummins argues, that Schroeder's testimony was not supported by documentary evidence, the record discloses that neither Cummins nor Fageol objected on that ground. Washington has adopted the rule that special damages such as loss of profits "must be shown with a reasonable degree of certainty and accuracy, and the proof establishing the loss must be clear and convincing, free from speculation or conjecture." *Pappas v. Zerwoodis*, 21 Wn.2d 725, 733, 153 P.2d 170 (1944). But oral testimony to which no objection is made may meet this test.

■ Fageol's final contention is that it was error to deny its claim for indemnity from Cummins. Fageol argues that Cummins' duty to indemnify is imposed by principles of equity rather than by express contractual agreement. Using a broad brush, Prosser has defined the duty:

> Indemnity is a shifting or responsibility from the shoulders of one person to another; and the duty to indemnify will be recognized in cases where community opinion would consider that in justice the responsibility should rest upon one rather than the other. This may be because of the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct.

W. Prosser, *The Law of Torts* 281 (3d ed. 1964). An essential caveat when applying a test of "equity and good conscience" is that each case must be judged upon its own peculiar facts.

> The duty to indemnify may arise, and indemnity may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indem-

170

nity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him. Thus the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case.

*Herrero v. Atkinson*, 227 Cal. App. 2d 69, 74, 38 Cal. Rptr. 490, 8 A.L.R.3d 629 (1964).

Fageol reasons that the facts demonstrate that all of Schroeder's damages are directly traceable to the defective piston rod cap. But, as the trial judge pointed out in his oral opinion, Fageol's warranty against defects applied to the entire truck of which the Cummins engine was a component. It is undisputed that a major cause of Schroeder's difficulties after the first repair of the engine was the severe vibration problem which Fageol either could not or would not diagnose and which Fageol did not attempt to solve. Schroeder was told by Fageol to "put some more miles on it and see if [the] vibration [will] smooth out."

Schroeder's contract was with Fageol. Even though, for the reasons herein discussed, Cummins was also responsible, Fageol had a direct contractual obligation to repair the truck. The trial judge determined that under all of the circumstances, Fageol and Cummins were equally culpable for Schroeder's losses. Equity and good conscience dictate that the entire burden should not be shifted to Cummins.

Affirmed.

FARRIS and CALLOW, JJ., concur.

Petition for rehearing denied January 29, 1975.

Review granted by Supreme Court March 26, 1975.