[No. 43634.    En Banc.    December 18, 1975.]

JOHN SCHROEDER, *Respondent*, v. FAGEOL MOTORS, INC., ET AL, *Petitioners.*

*Ryan, Bush, Swanson & Hendel* and *David H. Oswald,* for petitioner Fageol Motors, Inc.

*Riddell, Williams, Ivie, Bullitt & Walkinshaw,* by *Robert S. Ivie,* for petitioner Cummins Engine Co.

*Davies, Pearson, Anderson, Gadbow & Hayes, P.S.*, by *John C. Kouklis*, for respondent.

*Fredric C. Tausend, Mark M. Hough, Coleman P. Hall, Michael R. Sorensen, William L. Dwyer*, and *John J. Dystel*, amici curiae.

HUNTER, J.—In June of 1970, the plaintiff (respondent), John Schroeder, purchased a used 1970 White truck from the defendant (petitioner), Fageol Motors, Inc., to be used in the hauling of automobiles between California and Washington. The odometer showed 6,180 miles, and Fageol assured the plaintiff that the original warranty, which was still in effect, would cover the vehicle for an additional 94,000 miles. The new truck warranties were set out in an "Owner Book" which was separate from the purchase order signed by the plaintiff. While the plaintiff admitted that he would not have purchased the truck without the warranties, it is evident that Fageol did not go through the "Owner Book" and explain the intricacies of the warranties and the various disclaimers. In fact, the plaintiff was not advised of the existence of any disclaimers or exclusionary clauses. Upon signing the order, the plaintiff was given his "Owner Book" and directed to place it in the glove box.

On October 5, 1970, while the truck was in California, the engine exploded. At this time the vehicle still had more than 50,000 miles remaining on the warranty. The plaintiff notified Cummins Engine Co., Inc., also a defendant (petitioner) herein, whose separate warranty appeared in the "Owner Book." At its direction, the plaintiff took the truck to a local Cummins dealer, who undertook repairs without cost to the plaintiff. It was then determined that the engine failure was the result of a casting defect in a piston rod cap.

Upon completion of the repairs, the truck was returned to the plaintiff, yet it never functioned properly. The plaintiff, experiencing heating and vibration problems, made repeated complaints to both Cummins and Fageol. While nu-

merous attempts were made to correct the problems, neither defendant was ever successful.

The plaintiff ultimately brought suit against Fageol and Cummins for damages resulting from the defendants' failure to properly effectuate repairs in accordance with their own respective warranties. The complaint alleged that the plaintiff had incurred $8,431.45 in repair bills, and $12,160 in lost profits. The trial court concluded that the defendants had both made independent express warranties to repair the vehicle and that the damages alleged were proximately caused by a failure to fulfill these warranties. In reaching its decision, the court refused to recognize Fageol's claim that it was protected from any consequential damages due to an exclusionary clause contained in the White truck comprehensive warranty, which stated in normal size print: "In no event shall the Seller be liable for special or consequential damages." Relying on *Berg v. Stromme*, 79 Wn.2d 184, 484 P.2d 380 (1971), the court held that there had been no discussion nor explicit negotiations between Fageol and the plaintiff regarding limitations or disclaimers of liability, but rather that the plaintiff had merely been handed the "Owner Book" and instructed to keep it in the truck. Furthermore, there was no showing of a bargain and the clause was neither conspicuous nor were the limitations set forth with particularity. Secondly, the trial court held that Fageol was not entitled to indemnity against Cummins since both defendants had actively attempted, and failed, to make proper repairs.

The Court of Appeals affirmed all of the holdings of the trial court, *Schroeder v. Fageol Motors, Inc.*, 12 Wn. App. 161, 528 P.2d 992 (1974), and this court granted the defendants' petition for review.

The facts of this case present a question of first impression arising under the Washington State adaptation of the Uniform Commercial Code, to wit: whether a clause excluding consequential damages under RCW 62A.2-719(3) must be negotiated between the parties and set forth with particularity in a conspicuous manner. Put another way, do the

requirements set forth in *Berg v. Stromme, supra,* apply with equal force to an exclusionary clause under RCW 62A.2-719(3)? The defendant Fageol contends that the criteria utilized by the trial court is limited to cases arising under RCW 62A.2-316, and is not intended to apply to cases pertaining to RCW 62A.2-719(3). Furthermore, the defendant argues that "negotiations" and "conspicuousness" are only relevant in those instances involving consumers as opposed to a purely commercial transaction between businessmen.

■ We agree that the trial court and the Court of Appeals failed to properly distinguish between disclaimer and exclusionary clauses.

> A disclaimer clause is a device used to exclude or limit the seller's warranties; it attempts to control the seller's liability by reducing the number of situations in which the seller can be in breach. An exclusionary clause, on the other hand, restricts the remedies available to one or both parties once a breach is established.

J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 12-11, at 383-84 (1972). The functional purpose of RCW 62A.2-719(3) is to allow the parties to allocate their risks. Official Comment 1, RCWA 62A.2-719.

■ While the two sections are clearly distinguishable, they are not mutually exclusive, since both disclaimers and exclusionary clauses can be invalidated upon being declared unconscionable under RCW 62A.2-302. In fact, by its use of the word "unconscionable," RCW 62A.2-719(3) conditions the validity of an exclusionary clause on one factor —the standards set forth in RCW 62A.2-302. *Cryogenic Equip., Inc. v. Southern Nitrogen, Inc.,* 490 F.2d 696 (8th Cir. 1974). Therefore, once placed in its proper perspective, the true issue becomes whether "conspicuousness" and "the presence of negotiation" are relevant when defining the elusive concept of *unconscionability.*

While it is extremely difficult to articulate an operational definition of unconscionability, those cases interpreting the doctrine appear to fall within two classifications: (1) sub-

stantive unconscionability; and (2) procedural unconscionability. Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract. J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 4-2, at 117 (1972). In *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965), the court pronounced that procedural unconscionability was best described as a lack of "meaningful choice." In discussing the various factors to be considered in determining whether a meaningful choice is present, the court noted that consideration must be given to "all the circumstances surrounding the transaction," including "[t]he manner in which the contract was entered," whether each party had "a reasonable opportunity to understand the terms of the contract," and whether "the important terms [were] hidden in a maze of fine print . . ." *Williams v. Walker-Thomas Furniture Co., supra* at 449; *Reynolds v. Preferred Mut. Ins. Co.*, 11 U.C.C. Reporting Serv. 701 (Mass. App. 1972). It is readily apparent that both "conspicuousness" and "negotiations" are factors, albeit not conclusive, which are certainly relevant when determining the issue of conscionability in light of *all the surrounding circumstances*. Furthermore, the question of unconscionability cannot be judged in the abstract, but rather it must be determined in light of the general commercial setting. *Kohlenberger, Inc. v. Tyson's Foods, Inc.*, 510 S.W.2d 555 (Ark. 1974); *Dow Corning Corp. v. Capitol Aviation, Inc.*, 411 F.2d 622 (7th Cir. 1969). Therefore, several additional factors which must be considered, especially in purely commercial transactions, are prior course of dealings between the parties and usage of trade. RCW 62A.1-205(1) and (2); *Reynolds v. Preferred Mut. Ins. Co., supra*. Placing the above criteria within the context of the instant case, we must consider whether the plaintiff and Fageol, through prior contracts, had established a consistently adhered to policy of excluding consequential damages, or whether it is

a recognized practice within the trade to exclude consequential damages. The presence of either of these elements, unless the trade practice as related to the plaintiff was clearly unreasonable,[1] would support a finding of conscionability in spite of a lack of "negotiations" or the "inconspicuous" appearance of the clause.

We are fully aware that the rule enunciated in *Berg v. Stromme, supra,* was premised predominately on policy grounds. However, this does not support Fageol's contention that the *Berg* rule is limited to disclaimer cases involving innocent consumers as contrasted with purely commercial transactions involving businessmen. In *Dobias v. Western Farmers Ass'n,* 6 Wn. App. 194, 491 P.2d 1346 (1971), the Court of Appeals applied *Berg* to a commercial transaction, and in *Baker v. Seattle,* 79 Wn.2d 198, 484 P.2d 405 (1971), a case involving an injured consumer, we recognized that this public policy regarding disclaimers of liability extended to cases involving exclusionary clauses under RCW 62A.2-719(3). We now find no persuasive reason why this same public policy should not extend to cases arising under RCW 62A.2-719(3), in which the litigants are both businessmen. As correctly noted by another court when faced with this situation:

> While parties may agree to limit the remedies for breach of their contract, the policy of the Uniform Commercial Code disfavors limitations and specifically provides for their deletion if they would act to deprive a contracting party of reasonable protection against breach.

(Footnote omitted.) *Chemetron Corp. v. McLouth Steel Corp.,* 381 F. Supp. 245, 250 (N.D. Ill. 1974). We agree with Fageol that the Uniform Commercial Code was promulgated in order to develop uniformity in commercial trans-

---

[1] "[I]t is essential that 'trade custom' be considered a rule of thumb, to be disregarded when the crucial analysis of relative bargaining positions indicates that the consumer has been disadvantaged." (Footnote omitted.) Terry and Fauvre, *The Unconscionability Offense,* 4 Ga. L. Rev. 469, 503 (1970).

It is the unreasonableness and unfairness of a contract term which is the primary target of U.C.C. 2-302. *See* Spanogle, *Analyzing Unconscionability Problems,* 117 U. Pa. L. Rev. 931, 943 (1969).

actions. However, the single most important concept intertwined throughout the entire code is that of *good faith dealings*. The mere fact that both parties are businessmen does not justify the utilization of "unfair surprise" to the detriment of one of the parties. *Reynolds v. Preferred Mut. Ins. Co., supra.* The code specifically provides for consequential damages and an individual should be able to rely on their existence in the absence of being informed to the contrary, either directly, or constructively through prior course of dealings or usage of trade.

■ The issue of unconscionability presents a question of law for the court; not an issue of fact for the jury. *Haugen v. Ford Motor Co.*, 219 N.W.2d 462 (N.D. 1974); *Central Ohio Co-operative Milk Producers v. Rowland*, 29 Ohio App. 2d 236, 281 N.E.2d 42 (1972); *Zicari v. Joseph Harris Co.*, 33 App. Div. 2d 17, 304 N.Y.S.2d 918 (1969). RCW 62A.2-302 states:

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable *the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.*

(Italics ours.)

In accordance with the requisites set forth above, a court is not authorized to dispose of this issue under the rules governing summary judgment. *Zicari v. Joseph Harris Co., supra.* Instead, RCW 62A.2-302 envisions a full hearing at which time each party will have a "reasonable opportunity" to present evidence bearing on the question of unconscionability. Since exclusionary clauses in purely commercial transactions are prima facie conscionable, the burden

of establishing that a clause is unconscionable lies upon the party attacking it. *Kohlenberger, Inc. v. Tyson's Foods, Inc., supra; Bill Stremmel Motors, Inc. v. IDS Leasing Corp.,* 89 Nev. 414, 514 P.2d 654 (1973). In view of the fact that the trial court based its decision entirely on *Berg v. Stromme, supra,* without addressing the fundamental question of unconscionability in a manner required under the provisions of RCW 62A.2-302, we hold that the decisions of the trial court and the Court of Appeals are reversed, and this cause is remanded for a hearing consistent with the requirements set forth herein.

A subsidiary issue raised by Fageol is whether it is entitled to indemnification from Cummins for any damages assessed against it. Fageol argues that since Cummins manufactured the engine, it should be solely responsible. We disagree.

■ This is not a situation in which the plaintiff seeks to recover for the breach of an implied warranty of merchantability resulting from a defectively produced product, in which case the retailer acts merely as a conduit. Rather, Fageol made an express warranty under which it promised to make all repairs necessary. This warranty was independent from any agreement entered into between the plaintiff and Cummins. The trial court predicated the defendants' liability on the fact that they both had made express warranties to repair the truck; they both were given an opportunity to fulfill their respective warranty, and they both failed to do so, which proximately resulted in the plaintiff's damages. Therefore, in the absence of a separate contract for indemnification between Fageol and Cummins, there is no basis for imposing the entire burden of liability on the manufacturer, and insofar as this issue is concerned, the decisions of the trial court and the Court of Appeals are affirmed.

We affirm the decisions of the trial court and the Court of Appeals on the issue of indemnification, and reverse on

the issue of consequential damages, remanding this case for further proceedings consistent with this opinion.

STAFFORD, C.J., and FINLEY, ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.