[No. 4521–8–III. Division Three. June 21, 1983.]

GALEN ROTTINGHAUS, ET AL, *Respondents*, v. BILL
HOWELL, ET AL, *Appellants*, WESTERN COLD
STORAGE COMPANY, INC., ET AL,
*Respondents*.

*Darrell E. Ries* and *Ries & Kenison,* for appellants.

*John S. Moore* and *Velikanje, Moore & Shore,* for respondents Rottinghaus, et al.

*Seaton M. Daly, Sr.,* for respondent Western Cold Storage Co.

*John G. Schultz, Andrew Bohrnsen,* and *Leavy, Schultz & Sweeney,* for respondent Mojonnier & Sons.

*R. Max Etter, Jr.,* and *Layman, Mullin & Etter,* for respondent Montana Potato Improvement Association.

ROE, C.J.—This case involves an action brought by 10 plaintiff potato growers against a seed potato grower (defendant Howell); two distributors who cut, treated and sold the seed to plaintiffs (defendants Mojonnier & Sons, Inc., and Western Cold Storage Co., Inc., hereinafter Mojonnier and Western); and a nonprofit corporation charged with administering rules and regulations of a potato seed certification program (defendant Montana Potato Improvement Association, hereinafter MPIA).

In 1977, Howell produced seed potatoes which were certified by MPIA as Montana Blue Tag Certified Russet Burbank Seed. In its 1977 crop directory, MPIA listed Howell's crop as showing a 0–0–0 reading, that is, no disease found on any of the three field inspections.

In 1978, relying upon this directory, Mojonnier contacted Howell by telephone and agreed to purchase 5,000 cwt. of seed potatoes. This was later increased to 6,440 cwt. A written confirmation, supplied by MPIA, was later prepared by Mojonnier and signed by both parties. Mojonnier resold the seed to plaintiffs Rottinghaus, Heinen and Peterson. Plaintiffs planted the seed and the resulting potato crop was infected with bacterial ring rot. Since there is a zero tolerance rate for this disease, plaintiffs suffered a substantial crop loss. They brought an action for damages against Mojonnier, Howell and MPIA.

In 1978, relying upon the 1977 directory, Western telephoned Howell to arrange the purchase of 7,500 cwt. of seed potatoes. This was later increased to 10,710.9 cwt. A written confirmation of the purchase was later prepared by Howell and signed by the parties. Western resold the seed

to plaintiffs Melgren, Kummer Farms, Inc., Kummer, Emerson, Hirai, and Murphy. These plaintiffs also discovered ring rot in their crops grown from the Howell seed, resulting in crop loss. They brought an action against Western, Howell, and MPIA.[1]

The complaint of all plaintiffs alleged negligence, breach of implied and express warranties, strict liability and negligent misrepresentation. Defendants generally denied plaintiffs' claims and Mojonnier and Western cross–claimed against Howell. As a defense to the cross claim, Howell pleaded the "limitation of warranty and remedy" clauses[2] in the seed purchase contracts between Howell and Mojonnier, and Howell and Western.

At the commencement of the trial, Mojonnier and Western orally amended their pleadings to allege the limitation of warranty and remedy clauses produced by Howell and MPIA were unconscionable and unenforceable. After a 4–week trial, the court ruled as a matter of law the limitation of warranty was unconscionable but the limitation of damages provision was not. The jury was instructed upon the theories alleged in the complaint with the exception of strict liability. The jury found in favor of plaintiffs and, in answer to special interrogatories, found Western, Mojonnier and MPIA were negligent, and Western, Mojonnier and Howell breached their implied warranties. After considera-

---

[1]Western also furnished seed to Gordon & Carr under a joint venture agreement. Gordon and Carr dismissed their claims against Howell and Western but recovered against MPIA.

[2]The disclaimer in the Howell–Mojonnier contract reads:

"LIMITATION OF WARRANTY AND REMEDY

"Since the use, crop, yields or quality of certified seed potatoes is beyond the control of the producer, the seller, the inspector, or the Montana Potato Improvement Association, after loading for shipment, no warranty of any kind, express or implied, including merchantability, which extends beyond the description on the face of this tag is made concerning the performance or quality of these seed potatoes. By acceptance of these seed potatoes, buyer expressly agrees that its exclusive remedy for breach of any warranty shall be limited in all events to a return of the purchase price of the seed."

The disclaimer in the Howell–Western contract was essentially the same.

tion of posttrial motions and in light of *Hartwig Farms, Inc. v. Pacific Gamble Robinson Co.,* 28 Wn. App. 539, 625 P.2d 171 (1981) (decided after submission of the case to the jury but prior to entry of judgments on the verdict), the trial court reversed itself on the issue of the conscionability of the limitation of remedy provision, holding it was also unconscionable. The court further granted Mojonnier and Western judgment over against Howell for any amount paid by Mojonnier and Western to plaintiffs. Both Howell and MPIA appeal.

We begin with Howell's assignments of error. He contends the trial court erred in holding the limitation of warranty and remedy provisions were unconscionable and unreasonable.

██ ██ RCW 62A.2–316 allows a seller to limit or exclude warranties. *Hartwig.* However, disclaimers[3] are not favored in the law; as a result, courts have added two conditions for effectiveness: a disclaimer must be explicitly negotiated or bargained for and it must set forth with particularity the qualities and characteristics being disclaimed. *Berg v. Stromme,* 79 Wn.2d 184, 484 P.2d 380 (1971); *Hartwig; Dobias v. Western Farmers Ass'n,* 6 Wn. App. 194, 200, 491 P.2d 1346 (1971); *DeCoria v. Red's Trailer Mart, Inc.,* 5 Wn. App. 892, 491 P.2d 241 (1971); RCW 62A.2–316(4). A disclaimer made after a sale is completed cannot be effective because it was not a part of the bargain between the parties. *Hartwig,* at 543 (citing *Dorman v. International Harvester Co.,* 46 Cal. App. 3d 11, 120 Cal. Rptr. 516 (1975); *Cambern v. Hubbling,* 307 Minn. 168, 238 N.W.2d 622 (1976); *Sugarland Indus., Inc. v. A.J. Falco,* 360

---

[3] A disclaimer clause is a device used to exclude or limit the seller's warranties; it attempts to control the seller's liability by reducing the number of situations in which the seller can be in breach. An exclusionary clause, on the other hand, restricts the remedies available to one or both parties once a breach is established.
*Schroeder v. Fageol Motors, Inc.,* 86 Wn.2d 256, 259, 544 P.2d 20 (1975) (quoting J. White & R. Summers, *Uniform Commercial Code* § 12–11, at 383–84 (1972)).

Thus, here the limitations of warranty are disclaimers and the limitations of remedy are exclusionary clauses.

S.W.2d 806 (Tex. Civ. App. 1962)). Both disclaimers and exclusionary clauses may be invalidated upon being declared unconscionable under RCW 62A.2–302. *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 259, 544 P.2d 20 (1975). The issue of unconscionability presents a question of law for the court; not an issue of fact for the jury. *Schroeder*, at 262; RCW 62A.2–302(1).

 Here, the trial judge found[4] many reasons for holding the limitation of warranty and remedy provisions in the Howell–Mojonnier and Howell–Western contracts were ineffective, most importantly: (1) "There were no discussions, no bargaining, no negotiations, and no agreements as to either clause"; (2) they did "not set forth with particularity the particular qualities and characteristics which are being disclaimed"; and (3) they were "post–sale" since the contracts to purchase were created orally by telephone and afterwards written confirmations containing the unbargained–for limitations were forwarded to the buyers. The trial court's findings of fact will not be disturbed on appeal if there is substantial evidence to support them. *St. Regis Paper Co. v. Wicklund*, 93 Wn.2d 497, 503, 610 P.2d 903 (1980).

Howell further argues the telephone conversations between himself and Mojonnier and Western did not constitute enforceable contracts but rather the written confirmations containing the limitations were the actual contracts. Defendant relies on RCW 62A.2–201(1), which states in part:

> (1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is

---

[4]After the appeal was filed, the acting commissioner of this court granted Mojonnier's motion to remand to the trial court for entry of findings of fact and conclusions of law.

not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

However, subsection 2 specifically authorizes *oral* contracts:

(2) Between merchants[5] if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

RCW 62A.2–201(2); *see also* RCW 62A.2–201(3)(b) and RCW 62A.2–204(1). Here, Howell admitted in his testimony that a contract was formed during the conversation:

Q (Mr. Schultz, continuing) Mr. Howell, apparently you and Mr. Peterson then reached an agreement over the telephone where he would buy 5,000 hundredweight of blue tag grade certified Russet Burbank seed and would pay to you $4 per hundredweight f.o.b. Moiese, Montana?
A Yes.
. . .
Q Okay. At that point, did you set aside the seed for him? If someone else had called you the next minute and you were out, you'd have said I already sold it?
A Yes.
Q As far as you were concerned, it had been sold to Mojonnier?
A Yes.

Typically, purchase and sale contracts in the seed business are handled by phone. *See also Hartwig,* at 541. We hold there is substantial evidence to support the trial court's finding of an oral contract.

■ Next, Howell contends that even if the phone conversations constitute oral contracts, the limitation provisions may be considered additional terms of the contract pursuant to RCW 62A.2–207(1), which provides:

---

[5]It is undisputed that Howell, Mojonnier and Western are "merchants". *See* RCW 62A.2–104(1).

A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

However, Official Comment 4, RCWA 62A.2–207 states:

4. Examples of *typical clauses which would normally "materially alter" the contract* and so result in surprise or hardship if incorporated without express awareness by the other party *are: a clause negating such standard warranties as that of merchantability* or fitness for a particular purpose in circumstances in which either warranty normally attaches; . . .

(Italics ours.) In *Hartwig,* this court stated at page 544:

RCW 62A.2–207 should not be used to supply the negotiated agreement required for an effective disclaimer. Merely because Pacific had notice of the disclaimer's language does not mean it agreed to it. We will not supply that agreement.

Here, the limitation provisions were incorporated without the express awareness of Mojonnier or Western. There is no evidence to indicate the provisions were discussed, negotiated or bargained for. Since the limitations materially alter the contracts, they may not be treated as additional terms which became part of the contracts and are therefore not enforceable. Contrary to Howell's argument, the fact that the limitations appeared on written confirmations signed by the parties rather than an invoice as in *Hartwig* or a label attached to the container as in *Dobias* is irrelevant since here the parties did not contract for the limitations.

Next, Howell argues Mojonnier and Western expressly assented to the limitations because Mojonnier sent the purchase contract to Howell and a representative of Mojonnier signed it and a representative of Western signed the contract sent to it by Howell. *Hartwig* also addressed this issue, stating at page 545:

Tobiason argues Pacific's knowledge of the disclaimer renders it conspicuous. However, actual knowledge of the

disclaimer is insufficient to give it effect. *Dobias, supra* at 200. Without negotiation and agreement, no disclaimer, including the present one, can be effective.

Here, since there was no negotiation or agreement regarding the limitations, they are ineffective. Furthermore, the trial court found the limitations were inconspicuous, incomplete and confusing. The contracts themselves provide substantial evidence to support these findings, and thus we will not disturb them on appeal.

Finally, although RCW 62A.2–316(3)(c) allows exclusion or modification of an implied warranty by a course of dealing or usage of trade, the unchallenged findings establish there was no course of dealing between Howell and Mojonnier or Western and there was no recognized usage of trade to limit warranties or remedies. We hold the trial court correctly ruled as a matter of law the limitation provisions were unconscionable and unreasonable.

Next, we consider MPIA's assignments. First, it contends the trial court erred in failing to give its proposed instruction 12, which provides:

"You are instructed that when in the exercise of ordinary care a latent disease could not have been discovered, the liability of a defendant cannot be premised on his failure to discover it."

■ MPIA argues this instruction was necessary to present its theory of the case to the jury that plaintiffs' damages were caused by a latent disease in the seed potatoes which could not be discovered in the exercise of reasonable care. Expert testimony established that ring rot bacteria may be present in the seed potato tuber[6] or plant and yet not be subject to discovery by visual observation which is the only feasible method in the field for determining the presence or absence of ring rot. However, the testi-

[6]A tuber is a short, thickened, fleshy stem or terminal portion of a stem or rhizome that is usually formed underground, bears minute scale leaves each with a bud capable under suitable conditions of developing into a new plant, and constitutes the resting state of various plants (as the potato). *Webster's Third New International Dictionary* 2459 (1969).

mony also established ring rot may be discoverable. It might appear in the foliage and not be evident in the tubers or it may be evident in some of the tubers and not in others. A latent defect is one which could not have been discovered by inspection. *Arrow Transp. Co. v. A.O. Smith Co.,* 75 Wn.2d 843, 851, 454 P.2d 387 (1969). Here, it was for the jury to decide whether the potato seed was diseased before it was shipped by the seller Howell and whether defendant MPIA was negligent in failing to discover the disease. According to one of plaintiffs' experts, MPIA had not adopted appropriate rules and regulations, thereby increasing the risk that ring rot would not be discovered. There was also evidence from which the jury could have found MPIA did not properly follow its own prescribed procedures. Under these circumstances, it was appropriate to allow MPIA to argue its theory of the case regarding latency under the instructions given. The proposed instruction on latency may have been misleading since the jury could have then found defendant MPIA not liable based on a latent defect even though MPIA was negligent in establishing and carrying out its inspection procedures. Instructions are sufficient if they (1) permit each party to argue his theory of the case; (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law. *State v. Mark,* 94 Wn.2d 520, 522, 618 P.2d 73 (1980); *Braxton v. Rotec Indus., Inc.,* 30 Wn. App. 221, 224, 633 P.2d 897, *review denied,* 96 Wn.2d 1023 (1981).

MPIA's reliance on *Marsland v. Bullitt Co.,* 3 Wn. App. 286, 474 P.2d 589 (1970) is misplaced. There, the court held that failure to instruct the jury on each defendant's liability in equivalent terms was prejudicial error. Thus, the failure to instruct on one defendant's nonliability for an undiscoverable latent defect where the other defendant had the benefit of such an instruction was error. Here, no other defendant had the benefit of an instruction which created nonliability for an undiscoverable latent defect. Furthermore, the cases cited by MPIA dealt with latent defects in the context of premises liability and products liability

where there were personal injuries. Here, the damages consisted of crop loss. We find no error in the failure to give MPIA's proposed instruction 12. For the same reasons, it was not error for the trial court to give instruction 13 (the elements of negligent misrepresentation) without setting forth therein MPIA's duty regarding latent defects.

Next, MPIA contends the trial court erred in allowing plaintiffs to testify to their cost of production per acre. MPIA argues admission of this testimony was prejudicial as such costs are necessary to produce a crop and were not made necessary by any act of the defendants.

The proper measure of damages for the loss of a growing crop is the value of the crop at the time of the loss. *Desimone v. Mutual Materials Co.,* 20 Wn.2d 434, 438, 147 P.2d 945 (1944). This value may be determined either by evidence showing the reasonable value of the crop upon the land at the time of the loss, or the market value at the time of maturity less the cost of seeding, harvesting, and marketing. *Desimone,* at 438. The jury was correctly instructed on the measure of damages and is presumed to have followed that instruction. *Braxton v. Rotec Indus., Inc., supra.* The court gave its reasoning for admitting the evidence and denying the defendant's motion for a mistrial as follows:

> Motion for mistrial is denied. The jury will be given the damage formula, which they will be required to follow in assessing the damages in this particular case. It seems to the Court that the costs per acre was all part of the perspective, and even though it isn't a part of the formula, the Court does not deem it to be that prejudicial.

We hold the admitted evidence was not prejudicial error affecting or presumptively affecting the final result of the trial. *State v. Martin,* 73 Wn.2d 616, 627, 440 P.2d 429 (1968), *cert. denied,* 393 U.S. 1081 (1969).

MPIA next asserts the trial court erred by failing to grant its motion for a directed verdict or judgment notwithstanding the verdict because the evidence was insuffi-

cient to support a finding of negligence or negligent misrepresentation.

■ A challenge to the sufficiency of the evidence in the form of either a motion for a directed verdict or a judgment notwithstanding the verdict admits, for purposes of the motion, the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. *Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 533, 554 P.2d 1041 (1976). In ruling on such a motion, the evidence must be considered in the light most favorable to the nonmoving party; there is no element of discretion vested in the trial court; and the motion shall be granted only in those instances where it can be held as a matter of law that there is no competent evidence nor reasonable inferences which would sustain a jury verdict in favor of the nonmoving party. *Rasor.*

Here, there was conflicting evidence regarding the issue of MPIA's negligence in (1) adopting rules and regulations governing the seed potato certification program, (2) carrying out its rules, regulations and procedures, (3) detecting the presence of ring rot in seed shipped as "certified", and (4) representing to the ultimate purchaser in the seed directory and blue tags attached to the delivered seed that the seed was free from ring rot. According to plaintiffs' expert, Stuart Turner, the defendant's recertification program allowed for the replanting of seeds that had been marked the previous year as ineligible for recertification. Turner stated this practice permits the buildup of infection in the same generic lot of seed from generation to generation. In 1976, the field inspection record on defendant Howell's seed was marked "ineligible for recertification". Nonetheless, the 1977 seed directory showed the Howell seed as being free from disease. Turner further testified as to the feasibility of various procedures, stricter than those required in MPIA's rules and regulations, which procedures would aid growers in controlling and/or reducing infection by ring rot.

■ MPIA argues none of the plaintiffs relied on the seed directory but rather relied on the judgment of Mojonnier and Western, and since MPIA did not sell any seed to plaintiffs, it owed them no duty. This argument ignores the well recognized concept in products liability law that non-manufacturers involved in the chain of distribution which has placed a defective product in the stream of commerce may be liable to the purchaser. *See Seattle–First Nat'l Bank v. Volkswagen of Am., Inc.,* 11 Wn. App. 929, 525 P.2d 286 (1974), *aff'd sub nom. Seattle–First Nat'l Bank v. Tabert,* 86 Wn.2d 145, 542 P.2d 774 (1975) (seller held strictly liable); *Berg v. Stromme,* 79 Wn.2d 184, 484 P.2d 380 (1971) (seller violated implied warranty). The endorser of a product may also be liable. The landmark case of *Hanberry v. Hearst Corp.,* 276 Cal. App. 2d 680, 81 Cal. Rptr. 519, 39 A.L.R.3d 173 (1969) held a publisher liable for negligent misrepresentation where it endorsed a product by issuance of a seal and certification as to the quality of the product. *See also Baxter v. Ford Motor Co.,* 179 Wash. 123, 128, 35 P.2d 1090 (1934).

The plaintiffs relied on the judgment of defendants Mojonnier and Western to supply certified seed free from disease. Mojonnier and Western in turn relied on the information provided in the 1977 seed directory issued by MPIA. The directory was designed to induce sales, and it did. Plaintiffs further relied on the blue tag which stated the seed was certified in accordance with the rules and regulations of MPIA. MPIA's conduct in certifying the defective seed, issuing a blue tag stating such and representing the quality of the seed in the 1977 directory created an issue for the jury as to whether defendant was liable for negligence and negligent misrepresentation.

■ Finally, Western[7] claims the trial court erred in

---

[7] Only Western cross–appeals on this issue; Mojonnier has not assigned error to conclusion of law 7 regarding attorney's fees and costs.

denying it recovery of attorney's fees and costs against defendant Howell. Western cites *Hartwig Farms, Inc. v. Pacific Gamble Robinson Co.,* 28 Wn. App. 539, 625 P.2d 171 (1981) and *Dobias v. Western Farmers Ass'n,* 6 Wn. App. 194, 491 P.2d 1346 (1971) in support of its argument. *Hartwig* stated the rule at page 547:

> Indemnity will lie when a retailer incurs liability to the ultimate consumer through reliance on statements made by the manufacturer. *Dobias v. Western Farmers Ass'n,* [*supra* at 200]. Attorney's fees may be a proper element of consequential damages when the action is brought or defended by a third party not privy to the contract through which the litigation arose.

However, *Schroeder v. Fageol Motors, Inc.,* 86 Wn.2d 256, 544 P.2d 20 (1975) held that in the absence of an indemnification agreement between a manufacturer (*i.e.,* defendant Howell) and a seller (*i.e.,* defendant Western), the seller's express warranty creates joint liability with the manufacturer. The *Schroeder* court distinguished the facts in that case from other cases where the plaintiff seeks to recover for the breach of an implied warranty of merchantability resulting from a defectively produced product where the retailer acts merely as a conduit. *See Massingale v. Northwest Cortez, Inc.,* 27 Wn. App. 749, 620 P.2d 1009 (1980).

In this case Western was more than a mere conduit. It cut and treated the seed potatoes which it received from defendant Howell and in turn sold them to plaintiffs. There was evidence that Western employees discovered some tubers which appeared to have disease or damage. Although samples were collected, Western failed to obtain test results which may have revealed the presence of ring rot in the seed. The jury found Western was negligent and that its negligence was the proximate cause of plaintiffs' losses. Howell was not found negligent although it supplied the seeds. Since Western was held actively negligent, it is barred from seeking indemnity against Howell, and therefore the trial court correctly denied attorney's fees. *See Northwestern Mut. Ins. Co. v. Stromme,* 4 Wn. App. 85,

479 P.2d 554 (1971).

The trial court's judgment is affirmed in all respects.

MUNSON and McINTURFF, JJ., concur.

Reconsideration denied August 2, 1983.

Review denied by Supreme Court October 7, 1983.