PER CURIAM.
Appellants, defendants below, appeal from a final judgment finding them liable for the cost of repairs to a diesel engine.
In 1973, appellee Michael Montella purchased a used diesel engine and installed it in his boat. Appellant Cummins Engine Company, Inc. (Cummins) manufactured and sold the engine in 1966 to the original purchaser. Appellant Continental Insurance Company (Continental) insured appel-lee’s boat.
In 1975, appellee experienced difficulties with the performance of the engine. He sought the assistance of a diesel engine mechanic who diagnosed the problem as water leakage into the engine. To correct this malfunction the mechanic dismantled the engine. He discovered a bolt head in the engine’s oil pan and on further examination he found that the bolt had broken from “the number two bearing cap.” When he removed the bolt the bearing cap fell apart. The mechanic testified that the repairs to the engine for the water leakage would cost from $3,500 to $4,000. After discovering the fractured main bearing cap he revised his estimate of repairs to $5,000. The trial judge found that “[t]he actual cost of replacing and repairing the defective part [main bearing cap and cap bolt] was in the amount of $475.” Appellee also claimed damages for lost profits during the time required for repairs. Both parties concede that the broken bolt and bearing cap caused no damage to the engine or to the boat and that the repairs necessitated by the broken bolt and bearing cap were in no way related to the initial problem of water leaking into the engine.
When Continental denied appellee’s claim for the repair of the engine, he filed suit against Continental alleging coverage under a marine policy. He also filed suit *797 against Cummins alleging breach of implied warranty and negligence. The trial judge entered judgment in favor of the appellee and against Continental in the amount of $4,044.08 and against Cummins in the amount of $6,569.08.
Continental contends that since the defect in appellee’s engine failed to cause any damage to the engine or to the boat, under the clear language of its insurance policy no coverage exists for appellee’s loss. We agree. Appellee relies upon the “Inchmar-ee clause”[1] of the policy for coverage. This clause provides:
LATENT DEFECT AND NEGLIGENCE. This insurance also covers loss or damage to the vessel named herein directly caused by:

4. Bursting of boilers, breakage of shafts or any latent defect in machinery or hull (excluding the cost and expense of replacing or repairing the defective part) [Emphasis added].
An oft cited analysis of the effect given to “Inchmaree clauses” is stated in Ferrante v. Detroit Fire & Marine Ins. Co., 125 F.Supp. 621, 626 (S.D.Cal.1954). There, reviewing facts similar to those here, the Court said:
We believe that the effect of the exclusion, reasonably construed, is to delete rather than add coverage. It resolves any doubt whether the cost of repairing or renewing parts containing latent defects is covered. Reading the “Inchmar-ee” clause we find “This insurance ... to cover ... loss of or damage to ... machinery directly caused by ... breakage of shafts .... ” It seems clear that coverage of resultant or consequential damage only is intended. Thus a broken shaft is not a “cause of damage” until it has broken and the policy covers only whatever is caused thereafter and thereby. (Emphasis in original.)
See also, 91 A.L.R.2d 1295, § 5 Marine Insurance: Losses Covered By “Latent Defects” Provision of “Inchmaree Clause" (1963).
Appellee’s only claim against Continental concerns the alleged latent defect in the main bearing cap and bolt. This defect caused absolutely no damage whatsoever to any other components of the boat. Moreover, the only cost incurred as a result of the broken bearing cap were those expended in its repair. The “Inchmaree clause” clearly excludes such repair costs from the coverage afforded by Continental’s policy. Therefore we must reverse the judgment of the trial court finding Continental liable under the marine insurance policy issued to appellee.
Although Cummins raises several points on appeal, we need only discuss the question of whether a secondhand purchaser can recover the cost of repair of a used product from the manufacturer under a theory of breach of an implied warranty of merchantability.
Appellee sustained economic loss. However, except for the cost to repair the bearing cap and bolt, none of this loss was causally related to any damages to person or property resulting from the defective bearing cap and bolt. Accordingly, the trial court erred in awarding damages for the cost of repairing the water leak and for profits lost during the time it took to repair the engine.
The trial court misplaced its reliance on West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976), when it determined that ap-pellee, a secondhand purchaser, did not need to show privity in order to recover the cost of repair of the bearing cap and bolt. In West, Mr. Justice Adkins stated that the duty of a manufacturer “runs only to those who suffer personal injury or property damage as the result of using” a dangerous or defective product. If an injured plaintiff falls within this protected class, he need not show privity of contract to recover.
*798 The obligation of the manufacturer must become what in justice it ought to be — an enterprise liability, and one which should not depend upon the intricacies of the law of sales. The cost of injuries or damages, either to persons or property, resulting from defective products, should be borne by the makers of the products who put them into the channels of trade, rather than by the injured or damaged persons who are ordinarily powerless to protect themselves.
Id. at 92.
The policy reasons which underlie West are patently absent from this case. This bearing cap and bolt caused no injury whatever either to persons or property. The only loss associated with these parts is the cost to replace the parts themselves. At the time the parts broke, they were nine years old. To impose liability for repair of the parts on Cummins would in essence impose on a manufacturer, as a matter of law, a warranty for materials and workmanship unlimited in time. Such unlimited warranty liability is clearly contrary to the warranty provisions of Florida’s enactment of the Uniform Commercial Code, sections 672.313 through 672.318, Florida Statutes (1981), and furthers no public policy of this state. Accordingly, we hold that the trial court erred when it awarded damages in favor of appellee and against Cummins.
We reverse the judgment of the trial court and remand for entry of judgment in favor of appellants.
REVERSED and REMANDED.
GLICKSTEIN and DELL, JJ., and OWEN, WILLIAM C., Jr., Associate Judge, concur.
NOTE: DELL, J., did not participate in oral argument but has reviewed the presentation made at that proceeding.

. The Inchmaree clause takes its name from the early English case of Thames and Mersey Marine Insurance Company v. Hamilton Fraser and Company, 12 App.Cas. 484, which involved an accident on the steamship, Inchmaree.