444 So.2d 1068 (1984)
CEDARS OF LEBANON HOSPITAL CORP., Appellant,
v.
EUROPEAN X-RAY DISTRIBUTORS OF AMERICA, INC., and Saab-Scania, A.B., Appellees.
No. 82-2643.
District Court of Appeal of Florida, Third District.
January 24, 1984.
*1069 Smathers & Thompson and John W. Keller, III, Miami, for appellant.
Walton, Lantaff, Schroeder & Carson and Sally R. Doerner and Joan S. Buckley, Miami, for appellees.
Before HENDRY, NESBITT and BASKIN, JJ.
HENDRY, Judge.
Cedars of Lebanon Hospital Corporation appeals from the dismissal with prejudice of that portion of the fourth amended and supplemental complaint alleging a cause of action for breach of warranty and/or strict liability against Saab-Scania. For reasons more fully developed below, we affirm in part and reverse in part.
Appellant purchased two remote x-ray systems for use in its hospital. Appellee is a Swedish corporation which designed and manufactured the image systems and cut-film cameras for the x-ray equipment. The total remote x-ray system was assembled, and then distributed by European X-Ray Distributors of America, Inc. ("EXDA"). EXDA in turn sent the assembled x-ray system to Southeastern X-Ray Corp. ("SXC"). Appellant actually purchased the two systems from SXC. The total purchase price was $514,190.50.
Appellant alleges in its complaint[1] that the various components, when assembled, are internally incompatible because they are designed for different electrical currents with different cycles. As a result, the system is subject to constant and continuous breakdowns. The x-ray tubes and generators overheat when used for rapid exposures. As for the components manufactured by appellee, specifically the cut-film cameras, appellant alleges that these cannot be made to work at all. The image produced by the t.v. imaging system is of poor quality. The serial film changer, which is supposed to allow automatic rapid film changing, jams. In short, appellant alleges that the equipment is totally unfit for the intended purpose of taking diagnostic x-rays.
Appellee responds by stating that even if all of the above is true, there can be no cause of action for breach of express or implied warranties because there is no privity between the parties. The purchase contract was between appellant and SXC. Appellee also argues that there can be no cause of action for strict liability because no person suffered injuries as a result of the defective equipment, nor was there damage to any property other than to the x-ray systems themselves.
The relevant analysis must focus briefly on the history of strict liability and implied warranties, the culmination of which is reflected in the decision of the Florida Supreme Court in West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976), and in the adoption of the Uniform Commercial Code, Chapters 671-680, Florida Statutes (1981).
*1070 The theory that there must be contractual privity before an action can lie for injuries suffered as a result of dangerous and defective products placed on the market has been the bane of judicial existence since the doctrine was first enunciated in Winterbottom v. Wright, 10 Meeson & Welsby 109, 152 Eng.Rep. 402 (1842). This requirement, which had the effect of reducing the number of people able to file suit when they were injured, was perceived immediately as being harsh and unjust. Courts began to devise ways to circumvent the doctrine while still recognizing its validity. Cf. Thomas v. Winchester, 6 N.Y. 397, 57 Am.Dec. 455 (1852) (belladonna, a poison, mislabeled by manufacturer, who in turn sold it to a druggist, who in turn sold it to a customer; customer allowed to recover from manufacturer); MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916) (J. Cardozo writing decision that when nature of product is such that it is reasonably certain to place persons in peril when negligently made, liability attaches irrespective of contract); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960) (implied warranty of fitness for a particular purpose arises between manufacturer and ultimate purchaser when manufacturer puts a new automobile in the stream of trade and promotes it to the public). All jurisdictions eventually adopted exceptions to the privity requirement if the product was a food or drug, a dangerous instrumentality, or inherently defective.
Florida followed this universal trend of receding from the requirement of privity when injuries were caused by defective products. Cf. Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920) (dangerous instrumentality); Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313 (1944) (tainted food); Hoskins v. Jackson Grain Co., 63 So.2d 514 (Fla. 1953) (mislabeled grain); Matthews v. Lawnlite Co., 88 So.2d 299 (Fla. 1956) (inherent defect). By 1965, the development in the law of implied warranty reached a point where this court could state that "we conclude that privity no longer obtains in an implied warranty suit by a consumer against a manufacturer." Bernstein v. Lily-Tulip Cup Corp., 177 So.2d 362, 364 (Fla. 3d DCA 1965), aff'd, 181 So.2d 641 (Fla. 1966). With that statement, it appeared that the doctrine of privity was dead in Florida, at least with regard to suits to recover for personal injuries caused by defective products. When the Uniform Commercial Code was adopted in Florida, Chapter 65-254, Laws of Florida, the debate began again, focusing on whether the Code, with its emphasis on dealings between "buyers" and "sellers", intended to impose once more the absolute stricture of privity. Without a clear statement from the Florida Legislature, however, that by adopting the Uniform Commercial Code it intended to abrogate all of the common law exceptions to the doctrine of privity, cf. Arias v. State Farm Fire & Casualty Co., 426 So.2d 1136 (Fla. 1st DCA 1983), courts have refused to state that the pre-Code cases are no longer valid. Cf. Ford Motor Co. v. Pittman, 227 So.2d 246 (Fla. 1st DCA 1969), cert. denied, 237 So.2d 177 (Fla. 1970), cited with approval in West v. Caterpillar Tractor Co., Inc., 336 So.2d 80 (Fla. 1976). Finally, strict liability in tort was adopted by this state in West v. Caterpillar Tractor Co., Inc., supra. The Florida Supreme Court adopted the language of section 402A, Restatement (Second) of Torts in West and held that strict liability would be imposed when a manufacturer places a product on the market, knowing it is to be used without inspection for defects, which product proves to have a defect which causes an injury to a human being. Strict liability may be imposed for damages to property also when a defective product causes the damage. Cf. Adobe Building Centers, Inc. v. Reynolds, 403 So.2d 1033 (Fla. 4th DCA), rev. dismissed, 411 So.2d 380 (Fla. 1981). Strict liability eliminates privity as a doctrinal barrier to filing suit against a manufacturer of a defective product.[2] The language in West and subsequent *1071 cases, however, convinces us that strict liability should be reserved for those cases where there are personal injuries or damage to other property only. We therefore affirm the trial court's granting the motion to dismiss as to the count alleging a cause of action in strict liability.
At the same time as the courts were attempting to circumvent the strict confines of the privity requirement in personal injury cases, another line of cases developed which also abrogated the necessity for privity in a contractual relationship. In A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973), the Florida Supreme Court held that a third party general contractor, who may foreseeably be injured or [who] sustained an economic loss proximately caused by the negligent performance of a contractual duty by an architect, has a cause of action [in negligence] against the alleged negligent architect, notwithstanding the absence of privity. Id. at 402. See also Naranja Lakes Condominium No. One, Inc. v. Rizzo, 422 So.2d 1080 (Fla. 3d DCA 1982); Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc., 406 So.2d 515 (Fla. 4th DCA 1981), rev. denied, 417 So.2d 328 (Fla. 1982); Highlands County School Board v. K.D. Hedin Construction, Inc., 382 So.2d 90 (Fla. 2d DCA 1980); Parliament Towers Condominium v. Parliament House Realty, Inc., 377 So.2d 976 (Fla. 4th DCA 1979); Navajo Circle, Inc. v. Development Concepts Corp., 373 So.2d 689 (Fla. 2d DCA 1979); Luciani v. High, 372 So.2d 530 (Fla. 4th DCA 1979); Probert, Negligence & Economic Damage: The California-Florida Nexus, 33 U.Fla. L.R. 485 (1981). These cases involve only the negligent performance of a contract for professional services. These cases are interesting as another example of the complete abrogation of the privity requirement in a contractual context.
A third line of cases allowed an ultimate purchaser to sue a manufacturer for damages for breach of implied warranty of fitness for a particular purpose when there was only economic loss and no privity. Manheim v. Ford Motor Co., 201 So.2d 440 (Fla. 1967); Chrysler Corp. v. Miller, 310 So.2d 356 (Fla. 3d DCA 1975); Rehurek v. Chrysler Credit Corp., 262 So.2d 452 (Fla. 2d DCA), cert. denied, 267 So.2d 833 (Fla. 1972). The courts in both Miller and Rehurek based their decisions on the language of sections 672.315 and 672.316, Florida Statutes; that is to say, on the language of the Uniform Commercial Code. In so doing, the court in Rehurek stated:
When a purchaser answers the inducements made in the tremendous advertising campaigns carried on by the automobile industry and purchases a new automobile, he has the right to expect the automobile to perform properly and as represented. If it does not, through no fault of his, it appears to us that he should be allowed to seek redress.
Id. at 456. These cases take the philosophy of Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69 (1960), and expand it to validate actions for damages which a purchaser suffers when he is induced to buy the manufacturer's product and the product turns out to be worthless. However, it is clear that there remains an abundance of uncertainty about the degree to which privity is required to maintain a breach of warranty action by an ultimate purchaser against a manufacturer where the only damages are those for loss of bargain. While it is incorrect to state that there is no cause of action for economic damages under a breach of warranty theory,[3] courts and jurisdictions differ as to *1072 when such a cause of action will be allowed and under what circumstances. Cf. L. Frumer & M. Friedman, Products Liability, vol. 2 (1983); R. Hursh & H. Bailey, American Law of Products Liability, vols. 1 & 2 (2d ed. 1974).
Whatever the outer limits of these cases are, the above discussion indicates that there is no good reason for us to adopt a strictly literalist adherence to the doctrine of privity. Nor is it necessary for us to push beyond the outer limits of the doctrine as developed thus far and hold that there is no requirement of privity when an ultimate purchaser has economic damages only from a defective product. The instant case has additional facts which make resolution of that issue unnecessary. Appellant's fourth amended and supplemental complaint alleges that sales representatives from appellee manufacturer called upon appellant and made direct representations that the equipment was very advanced and "state of the art", that the equipment produced a very high quality diagnostic t.v. image, that it was the very finest remote x-ray equipment available, and that the equipment was capable of handling the high volume hospital use for which it was needed. Appellant further alleges that it was shown samples of prior models and told the new model would perform even better. It also alleges that it relied on appellee's representations and inducements when it decided to purchase the two remote x-ray systems. It seems fundamentally unfair, and anomolous in the extreme, to allow the manufacturer to hide behind the doctrine of privity when the product, which it induced the purchaser to buy, turns out to be worthless.[4] It also seems absurd, under these circumstances, to find that the appellant has recourse against the appellee manufacturer only when the x-ray equipment injures someone. Requiring the purchaser to go against the seller, who must proceed in indemnification against the distributor, who must proceed against the manufacturer, is wasteful and inefficient. We find, therefore, that appellee's conduct, if proven, created both an express warranty and an implied warranty of fitness for a particular purpose under sections 672.313 and 672.315, Florida Statutes 1981). Sections 672.714 and 672.715 provide the measure of damages for the breach of these warranties.
We affirm the trial court's dismissal of the count of the fourth amended and supplemental complaint alleging a cause of action for strict liability against appellee. We reverse the trial court's dismissal of the count alleging a cause of action for breach of express and implied warranties against appellee manufacturer. We remand for proceedings not inconsistent with this opinion.
Affirmed in part, reversed in part, and remanded for further proceedings.
NOTES
[1] In ruling on a motion to dismiss, the trial court is confined to the allegations within the four corners of the complaint, must accept these allegations as true, and may not speculate as to what the true facts may be. Emile v. Florida Power & Light Co., 426 So.2d 1152 (Fla. 3d DCA 1983).
[2] For further analysis of the West decision and a greater history of the development of products liability law in Florida, see Parks, Products Liability, 33 U.Miami L.R. 1185 (1979) and Comment, Products Liability in Florida Under Section 402A: New Language Or New Law?, 29 U.Fla. L.R. 398 (1977).
[3] Appellee appears to rely upon Continental Insurance Co. v. Montella, 427 So.2d 796 (Fla. 4th DCA 1983) for the proposition that there is no cause of action in Florida against a manufacturer for breach of an implied warranty when the only damages are those for economic losses. Montella involved a boat engine manufactured in 1966 and purchased by Montella in 1973. In 1975 water started leaking into the engine. In the process of repairing the engine, the mechanic found that a main bearing bolt was broken. Montella sued for the cost of repairs plus lost profits. Both parties agreed that the broken bolt was not the cause of the water leakage and that the bolt did no damage to the engine. The trial court allowed recovery on a theory of strict liability. The appellate court correctly reversed, holding that to do otherwise would impose upon a manufacturer a warranty for materials and workmanship unlimited in time. Montella does not address the issue of what happens when, as here, a purchaser buys brand new equipment which does not work properly and cannot be made to work properly.
[4] We wish to emphasize that we are focusing on the direct contacts between the manufacturer and the ultimate purchaser/consumer in finding that privity exists in this case. Had there been no direct contact between the two parties, appellee's contention that there was no privity, and thus no liability for breach of warranties, would be correct. It is the direct contacts which create the express and implied warranties under sections 672.313 and 672.315, Florida Statutes (1981).