UNITED VAN LINES, a Missouri
corporation, Plaintiff,

v.

HERTZ PENSKE TRUCK LEASING,
INC., a Delaware corporation,
Defendant.

No. C87-1176M.

United States District Court,

W.D. Washington,
at Seattle.

Jan. 24, 1989.

Kathleen Kim Coghlan, Keller Rohrback, Seattle, Wash., for plaintiff.

Bruce T. Clark, Karr Tuttle Campbell, Seattle, Wash., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McGOVERN, District Judge.

### I. FACTS

Hertz Penske Truck Leasing, Inc. rents trucks of various sizes and capacities to retail and commercial customers. Robert Suttles rented a truck from Hertz Penske on or about August 28, 1985. As stated in the complaint, Suttles rented the truck on behalf of Mardon Moving, the agent of Plaintiff United Van Lines, in order to transport x-ray equipment for Coastal Medical Systems, Inc. Suttles was given an opportunity to inspect the vehicle and did so. Suttles signed a form rental agreement which contained, among other provisions, a disclaimer in bold type and capital letters about an inch above the customer signature line:

**LESSOR MAKES NO WARRANTIES, EXPRESS, IMPLIED OR STATUTORY INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. CUSTOMER REPRESENTS THAT HE/SHE HAS FULLY INSPECTED THE VEHICLE DESCRIBED HEREIN AND THAT SAME IS IN GOOD CONDITION AND REPAIR.**

Hertz Penske also limited its liability. Immediately above the signature line is the statement:

The Vehicle described herein is rented pursuant to and in accordance with the terms and conditions set out above and on reverse side of this Agreement. Customer represents that he/she has read and agrees to same.... See reverse side.

The reverse side is entitled **"Truck Rental Agreement."** The agreement is comprised of 16 numbered paragraphs. Each paragraph has a title printed in all capitals on a separate line. Paragraphs 11 and 12, respectively, are entitled "NO LIABILITY FOR PROPERTY" and "LIABILITY OF LESSOR."

Plaintiff United Van Lines alleges that while the x-ray equipment was being transported, the tie rings securing one of the pieces of equipment pulled loose from the walls of the truck allowing the x-ray machine to fall and be damaged in the amount of $39,140 that Plaintiff paid to Coastal. Plaintiff further alleges that Hertz Penske was aware that the retainer rings in the walls of the truck were to be used by Mardon Moving Systems to secure the x-ray machines.

## II. ISSUES

Is Hertz Penske's disclaimer a valid exclusion of warranties?

Are Paragraphs 11 and 12 limiting Hertz Penske's liability void as unconscionable?

Has Plaintiff United Van Lines stated a cause of action under Washington's Consumer Protection Act?

## III. APPLICABLE LAW

The Washington Supreme Court has held that the Uniform Commercial Code applies to leases of chattels. *Baker v. Seattle,* 79 Wash.2d 198, 484 P.2d 405 (1971).

Unless excluded or modified pursuant to RCW 62A.2–316, Washington's Uniform Commercial Code provides an implied warranty of merchantability and an implied warranty of fitness for a particular purpose "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." RCW 62A.2–314, 2–315.

RCW 62A.2–316, "Exclusion or modification of warranties," provides in relevant part:

(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(3) Notwithstanding subsection (2)

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and

(c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

(4) Notwithstanding the provisions of subsections (2) and (3) of this section and the provisions of RCW 62A.2–719, as now or hereafter amended, in any case where goods are purchased primarily for personal, family or household use and not for commercial or business use, disclaimers of the warranty of merchantability or fitness for particular purpose shall not be effective to limit the liability of merchant sellers except insofar as the disclaimer sets forth with particularity the qualities and characteristics which are not being warranted. Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (RCW 62A.2–718 and RCW 62A.2–719).

These statutory provisions must now be analyzed in the context of Hertz Penske's contract terms.

## IV. ANALYSIS

### A. *Exclusion of Warranties*

 Relative to the implied warranty of merchantability, the Code requires that an exclusion "must mention merchantability and in case of writing must be conspicuous." The exclusion of warranties found in the Hertz Penske contract is (1) in writing, (2) expressly mentions the warranty of merchantability, and (3) is conspicuous, being printed in bold faced, all capital type within one inch of the customer signature line.

Concerning the warranty of fitness, it too must be in writing and must be conspicuous. The exclusion of the fitness warranty is presented in the same paragraph as the merchantability exclusion and is (1) in writing, (2) expressly mentions implied warranties of fitness for a particular purpose, and (3) is conspicuous, being printed in bold faced, all capital type within one inch of the customer signature line.

While Plaintiff argues that the qualities and characteristics being excluded have not been described with particularity, this requirement for particularity is specifically limited in RCW 62A.2–316(4) to those cases "where goods are purchased primarily for personal, family or household use and not for commercial or business use...." It is undisputed that the transaction between Hertz Penske and Mardon Moving was a commercial transaction. The requirement of particularity does not apply to commercial transactions. *See, Hartwig Farms v. Pacific Gamble Robinson,* 28 Wash.App. 539, 625 P.2d 171 (1981) (There was no discussion of the requirement of particularity in the Court's application of 2–316(4) and case law to declare the exclusions ineffective.) Neither is there a requirement that an exclusion of warranty be explicitly negotiated. *Id.* An effective exclusion of warranty need not have been discussed by the parties and may be a term of the contract presented to and accepted by the other party. *See, Frickel v. Sunnyside En-* *terprises,* 106 Wash.2d 714, 721, 725 P.2d 422 (1986); *Travis v. Horse Breeders,* 111 Wash.2d 396 at 401, 759 P.2d 418 (1988). While plaintiff relies heavily on *Berg v. Stromme,* 79 Wash.2d 184, 484 P.2d 380 (1971), that case concerned the sale of a new car in 1965, two years before RCW 62A.2–316 became effective.

Robert W. Suttles, who rented the truck from Hertz Penske for Mardon Moving, states in his affidavit, p. 2, "I requested a truck with a lift gate to handle moving heavy electronic equipment." He said that the truck presented to him had "circular rings," and "Hertz Penske never instructed me to not tie heavy objects to the circular rings. It is normal practice to use the rings to secure objects during transport." Mr. Suttles also states:

I inspected the physical condition of the truck, not its accessories (e.g., the circular rings). I always inspect rental trucks for cracked windshields, dents, etc. before I rent them. Hertz Penske did not specifically request that I inspect the quality of the circular rings. Tie-downs such as the circular rings have to be of high quality to secure heavy objects. I had no reason to doubt their quality. A reasonable inspection of the circular rings would not have revealed that they were not adequate for securing heavy objects. I couldn't tell just by looking at the rings that they would not function properly during a transport. I had never had any trouble with circular rings before that move.

Thus, Plaintiff argues that the fitness of the rings to secure the equipment that Mardon Moving intended to transport was not discoverable even if Mr. Suttles had inspected them; consequently, since examination would not have revealed the "defect," the warranty disclaimers are void.

A review of the organization of RCW 62A.2–316, "Exclusion or Modification of Warranties," will place the provisions in perspective and reveal the flaw in Plaintiff's "discoverability" argument. In Section (1), after addressing the situation where express warranties and warranty limitations coexist in a contract, Section (2)

sets forth how to modify or exclude implied warranties. Section (3) then goes on to list other ways in which implied warranties may be modified or excluded, notwithstanding Section (2). The additional ways listed are use of "as is" or "with all faults" language, inspection or refusal to inspect the goods (limited to defects that ought to have been discoverable), a course of dealing or usage of trade, and a specific provision that there are no implied warranties regarding sales of livestock (absent fraud, deceit, and misrepresentation). Finally, Section (4) tightens the requirements for making valid disclaimers where the goods are for personal, family, or household use, but not for commercial or business use. Moreover, the Official Comments (¶ 6) refer to Section (3) subsections (a), (b), and (c) as being "common factual situations in which the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is being excluded."

In summary, the code's arrangement sets forth a way in which warranties may be modified or excluded in the contract and goes on to list common circumstances that are sufficient to give rise to an effective exclusion of warranty.

Hertz Penske excluded the implied warranties of merchantability and fitness for a particular purpose utilizing the means described in RCW 62A.2–316(2). That Mr. Suttles also made an inspection of the vehicle cannot operate to restrict the viability of a properly executed exclusion. If Hertz Penske were relying only on the inspection to exclude the implied warranties, there would be an issue of whether the "defective" rings ought to have been revealed to Suttles, and whether, if defective, they constituted a breach of the warranties of merchantability and fitness for a particular purpose, if, indeed, Hertz Penske were aware of Mardon Moving's purpose. Hertz Penske did not simply rely on inspection to exclude implied warranties, but stated its unqualified exclusion of the warranties of merchantability and fitness for a particular purpose in bold, large typeface an inch above the signature line.

Additionally, it is undisputed that there was also a course of dealing between Hertz Penske and Mardon Moving. Pat Herb, District Manager for Hertz Penske states in his affidavit at page 3:

> Hertz Penske has rented vehicles to Mardon Moving prior to the above referenced agreement utilizing the same contract form as the one at issue so they have had more than one opportunity to review our contract. We have had no previous complaints or claims of unconscionability from them.

Mr. Herb also states,

> It is customary and usual for truck rental businesses to exclude any liability for property as set forth in paragraph 11 of the contract and to limit the types of liability as set forth in paragraph 12. These provisions are an economic necessity for truck rental businesses because they have no control over the property conveyed in their vehicle, the way the vehicles are loaded or the way the vehicles are driven. Under these circumstances, insuring against such risks or self-insuring would be prohibitively expensive. To try and pass the cost on to our customers would result in a significant rise in our rental fees.

(Herb Affidavit, p. 2.) As Defendant points out, Hertz Penske is in the truck rental business not the moving business, and understandably seeks to exclude warranties and limit liability as it has. It cannot be said that the exclusion of warranties are unconscionable.

While there may be a course of dealing or usage of trade that gives notice of the exclusion of warranties, this is merely an additional indicator of the parties' agreement concerning implied warranties. Hertz Penske need not rely on this alone. Hertz Penske chose to explicitly exclude warranties in its lease contracts by the clear unambiguous language stated, and none of the circumstances of the lease with Suttles operate to detract from the exclusion.

### B. Limitations of Liability in Paragraphs 11 and 12

■ Neither are the limitations on liability in Paragraphs 11 and 12 of the contract

unconscionable. The Court may make this determination as a matter of law. RCW 62A.2–302. *Schroeder v. Fageol Motors,* 86 Wash.2d 256, 544 P.2d 20 (1975). The UCC provides that an agreement may provide for remedies in addition or in substitution for those provided in Article 2 of the Code and may limit or alter the measure of damages recoverable unless the limitation under the circumstances is proven to be unconscionable. *See* RCW 62A.2–302 and 2–719. *Schroeder* noted that "exclusionary clauses in purely commercial transactions are prima facie conscionable . . .," and that "the burden of establishing that a clause is unconscionable lies upon the party attacking it." *Id.* at 262–63, 544 P.2d 20. *Schroeder* then discussed certain criteria relevant to determining unconscionability:

(1) whether each party had a reasonable opportunity to understand the terms of the contract,

(2) whether the important terms were hidden in a maze of fine print,

(3) the prior course of dealings between the parties, and

(4) the usage of trade.

Considering the above criteria with Paragraphs 11 and 12 of the contract leads to the conclusion that there is no unconscionability in the terms.

First, each party had an opportunity to understand the terms of the contract. Mr. Suttles states in his affidavit, "They did not specifically instruct me to read the preprinted material on the reverse side. I don't normally read the back side." Such failure to read contract terms when not brought about by fraud does not excuse the signing party from compliance with those terms. In *H.D. Fowler Co. v. Warren,* 17 Wash.App. 178, 562 P.2d 646 (1977), the defendant claimed ignorance of contract terms found on the reverse side of the form. The court did not accept this argument, saying:

> Incorporation of the terms and conditions on the reverse side is also plainly and openly stated slightly below and to the left of Warren's signature on each order form. That provision is as plain as any of the other terms on the face of the

form. Warren could not have understood his contract obligations or those of Fowler unless he read the simple terms on the face of the contract and paid some attention to those on the back, the imprint of which shows through the face.

17 Wash.App. at 181, 562 P.2d 646. *See also, Lyall v. DeYoung,* 42 Wash.App. 252, 711 P.2d 356 (1985). Mr. Suttles makes no allegations of fraud regarding his failure to read the terms of the contract. He signed the contract immediately below a boldface type representation that he had read the reverse side. A mere scan of the paragraph titles would make clear that Hertz Penske disclaimed liability for damage to property.

Second, the terms of the paragraphs were not hidden in a maze of fine print but were highlighted by explanatory titles. The paragraphs themselves are brief and written in language understandable to a lay person.

Finally, the third and fourth considerations reveal a prior course of dealing between these parties utilizing the same form agreement without objection or problem. The nature of the truck rental business, as distinguished from the moving business, reveal a reasonable economic basis for the limitation provisions.

### C. The Consumer Protection Act

■ The elements for establishing a private cause of action under Washington's Consumer Protection Act (RCW 19.86) are set forth in *Hangman Ridge v. Safeco Title,* 105 Wash.2d 778, 719 P.2d 531 (1986):

1. An unfair or deceptive act or practice.

2. The act or practice complained of occurred in the conduct of trade or commerce.

3. There must be a public interest at issue.

4. The plaintiff was injured in his or her business or property.

5. Causation: Plaintiff's business or property injury must be caused by a violation of RCW 19.86.020.

Elements one and three are disputed.

First, there was no unfair or deceptive act or practice. Plaintiff contends that the "recommendation" of an unfit truck and the use of hidden disclaimers constitute unfair and deceptive acts. There is no evidence, however, that any "recommendation" or "representation" was made by Hertz Penske apart from providing a truck of the type requested. Mr. Suttles states in Paragraph 4 of his affidavit:

I requested a truck with a lift gate to handle moving heavy electronic equipment. Hertz Penske provided the truck in question. Some trucks have slatted sides, This truck had circular rings. I didn't specifically request circular rings.

In the following paragraph, Mr. Suttles states:

... Hertz Penske has never in the past and did not this time request that I not transport particular types of goods in its trucks.

Hertz Penske merely provided what Mr. Suttles requested and gave him an opportunity to inspect it to determine that it suited his purpose. Plaintiff has offered no evidence in support of its allegation that "Hertz Penske routinely made representations that the trucks were fit without having actual knowledge of their fitness." Plaintiff's allegation that the rental agreement itself is deceptive because it was not clear on its face is without foundation; the clarity with which the contract's terms were set forth is discussed in the foregoing sections.

Concerning the third element, the manner in which the public interest may be established was discussed in *Hangman Ridge:*

Where the transaction was essentially a consumer transaction ... these factors are relevant to establish public interest: (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?

105 Wash.2d at 790, 719 P.2d 531.

Plaintiff alleges that the deceptive acts were part of a pattern of conduct, for instance, because Mardon Moving was not directed to inspect a vehicle beyond its general physical condition. Plaintiff refers to Mr. Suttles' affidavit, page 2. Mr. Suttles states at paragraph 6:

I inspected the physical condition of the truck, not its accessories (e.g., the circular rings). I always inspect rental trucks for cracked windshields, dents, etc. before I rent them. Hertz Penske did not specifically request that I inspect the quality of the circular rings....

How the failure of Mr. Suttles to inspect the circular rings amounts to a deceptive act that is part of a pattern of conduct by Hertz Penske is not shown. This activity in no way amounts to the conduct in the cases cited by the *Hangman Ridge* court: *State v. Ralph Williams*, 87 Wash.2d 298, 553 P.2d 423 (1976), appeal dismissed, 430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977) (general policies of grossly inflating sales prices and stating false requirements regarding the purchase of insurance from a subsidiary of defendant); *Testo v. Russ Dunmire Oldsmobile*, 16 Wash.App. 39, 554 P.2d 349 (1976) (failure to investigate or disclose past history of used vehicles); *Haner v. Quincy Farm Chems, Inc.*, 97 Wash.2d 753, 649 P.2d 828 (1982) (inaccurate and inflated germination rates printed on seed packets).

There is no evidence of repeated prior acts, and even if there were, there is nothing deceptive about presenting a truck for the potential customer's inspection. The potential for repetition of the presenting trucks to customers will likely repeat itself, but there is no basis for concluding that this will lead to similar complaints from other customers. There is no evidence that this was other than a single transaction having no effect on other consumers.

There being no deceptive act, the damage to the equipment was not caused by a violation of RCW 19.86.020.

### D. Attorney's Fees

 A plaintiff in a private Consumer Protection Action is entitled to recover attorneys' fees only if it establishes all five elements of a private CPA action. *Hangman Ridge*, 105 Wash.2d at 795, 719 P.2d 531. Plaintiff has failed to establish all five elements and is therefore not entitled to its attorneys' fees under RCW 19.86.090.

Defendant Hertz Penske cites RCW 4.84.330 in claiming attorney's fees for itself. That statute provides:

In any action on a contract or lease entered into after September 21, 1977, **where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease,** shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

(Emphasis added.) Hertz Penske has not pointed to a specific term of the contract that provides for attorney's fees to the prevailing party. Accordingly, attorney's fees are denied to Hertz Penske.

### E. Conclusion

For the foregoing reasons, Defendant Hertz Penske's Motion for Summary Judgment is GRANTED.

Plaintiff's cause of action under Washington's Consumer Protection Act is DISMISSED.

The parties' requests for attorneys' fees are DENIED.