
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ALL STAR TRUCKING LLC, | ) | No. 75352-5-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| RYDER VEHICLE SALES, LLC, A | ) | UNPUBLISHED OPINION |
| Washington Limited Liability Company, | ) | |
| | ) | |
| Respondent. | ) | FILED: July 24, 2017 |

LEACH, J. — All Star Trucking LLC appeals the summary judgment dismissal of its lawsuit against Ryder Vehicle Sales LLC. Because All Star failed to establish a genuine issue of material fact as to any of its claims, we affirm.

## FACTS

Gurminder Singh moved to the United States from India in 2013. He formed All Star, his own long-haul trucking business, the next year.

On June 25, 2014, Singh visited Ryder's truck dealership in Des Moines to purchase a Freightliner Columbia tractor truck. Singh had driven this model before and was confident he wanted to buy it. Though Singh spoke limited English, he knew that Ryder's sales manager, Muddasir Mirza, spoke both Punjabi and Hindi. Singh also brought an English-speaking friend to help him.

Mirza told Singh that Ryder had two Freightliner Columbia trucks for sale. Singh sat in the driver's seat of one of them, which had 764,881 miles on it. He

turned on the engine and examined the gauges. However, he did not drive the truck because "[i]t's no use test-driving if there is no load in it." According to Singh, Mirza told him that the truck had been "fully inspected and repaired by Ryder before it reached the lot" and that it was "fine."

Satisfied, Singh returned to the Ryder dealership two days later, on June 27, 2014, and purchased the truck for $29,149. Singh admitted that he had not looked at or considering buying any other trucks because "I had heard Ryder's a good company, they take care of their trucks, and the company is good and their trucks are good." Ryder provided Singh with a nine-page inspection report. It said that the truck had been inspected two months earlier and that all components had passed inspection. The report noted only that the tail lights, visor light, and license plate lights were dim or burned out.

Ryder provided a limited express warranty for the truck. Singh signed and initialed it. The warranty stated,

> Ryder Truck Rental, Inc. ("Ryder") hereby warrants all covered components of the Vehicle identified herein against defects in material and workmanship for the first 30 days or 10,000 miles/16,000 kilometers from the Date of Sale, whichever comes first.

The warranty identified the covered components as the engine, the transmission, and the rear axle. The warranty specifically excluded carburetors, spark plugs, water pumps, hoses, belts, thermostats, engine electronic systems, charge air coolers, fuel pump seals and electronics, and external cylinder head gasket oil and

water leaks.  The warranty also excluded "ordinary wear and tear."  Finally, the warranty stated, in bold print and capital letters:

> THIS LIMITED WARRANTY IS IN LIEU OF ANY AND ALL OTHER EXPRESS OR IMPLIED WARRANTIES, AND RYDER EXPRESSLY DISCLAIMS ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE.
>
> PURCHASER ACKNOWLEDGES THAT THE VEHICLE HAS BEEN PREVIOUSLY OWNED, IS USED AND NOT NEW AND, EXCEPT FOR THE LIMITED WARRANTY IS PURCHASED "AS IS."

But Singh claims that Mirza told him, "Anything goes wrong, Ryder will fix it."

Mirza also offered to sell Singh an extended service warranty.  It covered repairs to the engine or transmission for up to a year and cost an additional $5,000.  Singh declined the extended warranty.  He stated that he could not afford it.  Singh signed a form stating,

> I hereby decline to purchase the Ryder Road Ready PLUS Service Contract Agreement.  I understand that I relinquish all right and provisions including any future service repair reimbursement that may occur outside the 30 day Ryder Used Vehicle Limited Warranty certificate agreement.

Singh testified that he understood that he would be bound by the terms of the documents he signed.  However, he admitted that he did not read them or have his friend translate them for him.

Singh drove the truck to his home the day he purchased it.  There, he noticed leakage from the front axle.  Ryder instructed Singh to take it to a repair shop and paid the cost of the repair.  Ryder also gave Singh a postpurchase

-3-

inspection form to identify any other problems with the truck. Singh did not identify any other problems.

Singh testified that he made six or seven trips hauling cargo to California and consistently had problems with the truck. The record contains references to repairs performed by Sacramento Truck Center on July 28, 2014, by Valley Freightliner on August 19, 2014, and by Pacific Power Products on September 8, 2014. Mirza stated that while the express warranty did not cover any of these repairs, Ryder paid for the August and September repairs because Singh "his wife, and others on his behalf called and emailed persistently to the point it was a material distraction to running the dealership."

In exchange for the August and September repairs, Singh signed releases waiving Ryder's further responsibility for the truck. The releases said,

> . . . You understand that Ryder is agreeing to make this payment as a one-time business accommodation for you and not because it is obligated to do so under the terms of the warranty or otherwise.
>
> By accepting these terms from Ryder and signing below, you agree to waive and release Ryder (and all of its affiliated companies and persons) from all further responsibility of any kind with respect to the Vehicle and from and against any claims you may have with respect to it, whether those claims are now known by you or hereafter discovered. You further acknowledge that this waiver and release is unconditional, that Ryder has relied upon it in making this accommodation, and that your signature below acknowledges your agreement and authority to make this agreement.

On a trip home from California in late September or early October, the truck began vibrating. According to Singh, Pacific Power Products told him "that the

-4-

engine needed to be rebuilt to finally solve all of the truck's problems." Pacific Power Products gave Singh an estimate of approximately $21,000 to rebuild the engine. Singh has not driven the truck since that time, believing it was not safe to drive.

On May 15, 2015, All Star sued Ryder, alleging breach of express warranty, breach of the implied warranties of merchantability and fitness for a particular purpose, and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW.[1] Ryder moved for summary judgment. The trial court granted Ryder's motion and dismissed All Star's lawsuit. All Star appeals.

## STANDARD OF REVIEW

We review an order granting summary judgment de novo.[2] We will affirm summary judgment when the record shows no genuine issue about any material fact and the moving party is entitled to judgment as a matter of law.[3] "A material fact is one upon which the outcome of the litigation depends."[4] When reviewing a summary judgment order, we engage in the same inquiry as the trial court, considering the facts and all reasonable inferences from the facts in the light most

---

[1] All Star also alleged claims for revocation of acceptance and unjust enrichment, which are not at issue in this appeal.
[2] Owen v. Burlington N. Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005).
[3] Owen, 153 Wn.2d at 787.
[4] Balise v. Underwood, 62 Wn.2d 195, 199, 381 P.2d 966 (1963).

favorable to the nonmoving party.[5] We may affirm a trial court's grant of summary judgment on any basis supported by the record.[6]

ANALYSIS

All Star contends that summary judgment was inappropriate because a reasonable trier of fact could have concluded that the limited express warranty's disclaimer was unconscionable.

RCW 62A.2-316 allows a seller to limit or exclude warranties. "Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."[7] And

> [w]hen the buyer before entering into the contract has examined the goods or the sample or model as fully as he or she desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him or her.[8]

Washington courts have adopted a totality of the circumstances approach for deciding the enforceability of a warranty disclaimer in a commercial setting.[9]

---

[5] Right-Price Recreation, LLC v. Connells Prairie Cmty. Council, 146 Wn.2d 370, 381, 46 P.3d 789 (2002).
[6] Steinbock v. Ferry County Pub. Util. Dist. No. 1, 165 Wn. App. 479, 485, 269 P.3d 275 (2011).
[7] RCW 62A.2-316(3)(a).
[8] RCW 62A.2-316(3)(b).
[9] Puget Sound Fin., LLC v. Unisearch, Inc., 146 Wn.2d 428, 439, 47 P.3d 940 (2002). This contrasts with the two-prong approach applied to warranty disclaimers in a consumer transaction, which must be both (1) explicitly negotiated

The nonexclusive factors considered when making this decision include (1) the conspicuousness of the disclaimer in the agreement, (2) the presence or absence of negotiation about the disclaimer, (3) the custom and usage of the trade, and (4) any policy developed between the parties during the course of dealing.[10] To specifically disclaim the implied warranty of merchantability or fitness, the Uniform Commercial Code also requires that the disclaimer be in writing and conspicuous.[11] Under the totality of the circumstances approach, we presume the disclaimer is conscionable unless the party challenging it shows otherwise.[12]

Here, All Star fails to raise a genuine issue of material fact about the effectiveness of the limited warranty to disclaim Ryder's liability. First, the disclaimer is in writing and conspicuous. The limited warranty was printed on a single page. The disclaimer is written in bold type and all capital letters at the very top of the page. And the disclaimer expressly mentions both the implied warranties of merchantability and fitness. Second, Singh had a reasonable opportunity to understand and discuss the terms of the disclaimer. Singh had bought trucks before and knew that documents he signed were binding on him. Though Singh read and spoke limited English, he brought an English-speaking friend to assist

---

and (2) set forth with particularity. See, e.g., Berg v. Stromme, 79 Wn.2d 184, 196, 484 P.2d 380 (1971).

[10] Puget Sound, 146 Wn.2d at 439 (citing Schroeder v. Fageol Motors, Inc., 86 Wn.2d 256, 259-61, 544 P.2d 20 (1975)).

[11] RCW 62A.2-316(2).

[12] Puget Sound, 146 Wn.2d at 439 (citing Schroeder, 86 Wn.2d at 262).

him. And Ryder's sales manager spoke Singh's native languages. Moreover, Singh had the option to purchase additional coverage, which he declined. The record contains no information about industry custom, and All Star had no prior course of dealing with Ryder. Thus, the totality of the circumstances supports the conscionability and enforceability of the warranty disclaimer.

All Star contends that a court can never grant summary judgment when a party has raised a claim of unconscionability. He cites RCW 62A.2-302(2), which provides, "When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." But a summary judgment hearing gives a party the reasonable opportunity to present evidence contemplated by this statute.[13] And "unconscionability may be determined on summary judgment if there is no possibility, or no threshold showing, of unconscionability."[14]

Quoting Cox v. Lewiston Grain Growers, Inc.,[15] All Star contends that even if the warranty disclaimer is conscionable, it is unenforceable if it "'fails its essential purpose.'" "A limitation of remedies fails its essential purpose when the defect is latent and non-discoverable upon reasonable inspection."[16] But Cox involved

---

[13] RCW 62A.2-302(1); M.A. Mortenson Co. v. Timberline Software Corp., 93 Wn. App. 819, 835, 970 P.2d 803 (1999).
[14] M.A. Mortenson Co., 93 Wn. App. at 835.
[15] 86 Wn. App. 357, 370, 936 P.2d 1191 (1997).
[16] Cox, 86 Wn. App. at 370.

wheat seed that failed to germinate adequately because it had been treated with pesticides. The court found that the warranty disclaimer was not enforceable because the buyer could not have discovered the defect until he planted the seed.[17] Here, however, All Star fails to establish that any alleged problems in the truck could not have been discovered with reasonable inspection.[18]

Finally, All Star asserts the trial court erred in dismissing its CPA claim. To prevail on a CPA claim, a plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury.[19] "[W]hether a particular action gives rise to a Consumer Protection Act violation is reviewable as a question of law."[20]

All Star asserts only that "[a] reasonable jury could find that Ryder's course of dealing with All Star from the time of the truck's sale through the parties' last interaction in October, 2014 was oppressive and heavy-handed, and amounted to unfair or deceptive acts or practices in trade or commerce." But this general statement does not prove, nor does the record support, any claim for unfair or

---

[17] Cox, 86 Wn. App. at 370.

[18] Because All Star fails to establish that Ryder was obligated pursuant to express or implied warranties to pay for the repairs, we need not address his claim that the releases were unenforceable for lack of consideration.

[19] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

[20] Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

deceptive practices here. "Absent adequate, cogent argument and briefing, we decline to wander through the complexities of the Consumer Protection Act."[21]

We affirm the summary judgment dismissal of All Star's lawsuit.

_Leach, J._

WE CONCUR:

_Schindler, J._          _Becker, J._

---

[21] Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989); see also Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").