IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TRACY HOPKINS, an individual, | No. 87888-3-I |
| Respondent, | DIVISION ONE |
| v. | |
| BRISTOL-MYERS SQUIBB COMPANY, a Delaware corporation; and ANN HOUSEMAN an individual, | UNPUBLISHED OPINION |
| Appellants. | |

SMITH, J. — Tracy Hopkins began working at Bristol-Myers Squibb Company (BMS) when it acquired Celgene/Juno Therapeutics, Inc, sometime in late 2019 and early 2020.  In Fall 2022, BMS gave Hopkins a mutual arbitration agreement to sign.  In 2024, Hopkins was terminated and she sued for wrongful termination.  BMS sought arbitration which the court denied.  BMS appeals and in response, Hopkins asserts substantive and procedural unconscionability.  Because we cannot make a determination regarding procedural unconscionability of the mutual arbitration agreement without further factual findings, we remand to the trial court for further proceedings consistent with this opinion.

FACTS

Beginning in 2018, Celgene/Juno Therapeutics, Inc. employed Tracy Hopkins as a Senior Manager - Human Resources Business Partner (HRBP).

Sometime between late 2019 to early 2020, BMS acquired Celgene. In November 2022, BMS's recruiting team gave Hopkins a mutual arbitration agreement to sign. In part, the agreement stated that the employee signing the agreement received valid and sufficient consideration: "For current employees, consideration includes, but is not limited to, continued employment, benefits related to employment, including eligibility for annual bonus or incentive compensation . . . and the bilateral obligation to arbitrate." The agreement also stated, "[I]f you continue to work for the Company without signing this Agreement for a period of 30 calendar days, this Agreement will be effective, and you will have agreed to, ratified, and accepted this agreement."

Hopkins indicated that she and the entire team were confused about the contents of the document and had questions and concerns about the timing and legitimacy of the agreement, but she claimed that BMS's recruiting team could not answer them. BMS's recruiting team told Hopkins that the document was not created by them and "they were just the messengers." Hopkins did not want to lose her job, so in February 2023, she signed the arbitration agreement. In Fall 2023, Hopkins took a temporary "Tour of Duty" position in BMS's Global Talent Acquisition Enablement Department. Carolyn Kelley, Hopkins's direct supervisor, placed Alex Santiago in Hopkins's HRBP position. Kelley assured Hopkins that she could return to her position after she completed her Tour of Duty. While Hopkins was on her Tour of Duty, Kelley informed her she was terminated from her position as a HRBP. Kelley invited Hopkins to reapply for her HRBP position.

2

Hopkins sued BMS for discriminatory practices resulting in wrongful termination. BMS then moved to compel arbitration, claiming that the mutual arbitration agreement prevented a court from resolving the dispute. The trial court denied BMS's motion, citing *McKasson v. Johnson*, 178 Wn. App. 422, 315 P.3d 1138 (2013), and explaining that "it is the law in Washington that continued employment is insufficient consideration for a new employment condition." BMS appeals.

## ANALYSIS

### Validity of the Agreement

BMS asserts that the court did not have the authority to decide the validity of the agreement because the mutual arbitration agreement delegated this authority to an arbitrator. Hopkins contends that the court may resolve the issue of whether the agreement is enforceable. We agree with Hopkins.

A trial court's decision to compel or deny arbitration is reviewed de novo. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 46, 470 P.3d 486 (2020).

Under RCW 7.04A.060(1), an agreement to arbitrate controversies between parties "is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of contract." It is "the court's responsibility to determine whether the arbitration contract is valid." *Burnett*, 196 Wn.2d at 46. The party opposing arbitration has the burden to demonstrate that the arbitration agreement is not enforceable. *Burnett*, 196 Wn.2d at 46-47. "If the court finds that there is an enforceable agreement to arbitrate, it shall order

the parties to arbitrate. If the court finds that there is no enforceable agreement, it may not order the parties to arbitrate." RCW 7.04A.070(2).

Under Section 4, Arbitration Procedures, the mutual arbitration agreement between BMS and Hopkins states that any party has the right to file a motion to dismiss or a motion for summary judgment with the arbitrator. However, the agreement does not delegate authority to an arbitrator to determine the validity and enforceability of the agreement. Because no clear language authorizes the arbitrator to determine threshold agreement issues, we find that the court did not err in determining the validity of the arbitration agreement.

<u>Consideration for the Agreement</u>

BMS contends that sufficient consideration for the agreement exists because Hopkins received the benefit of continued employment, other benefits relating to employment, and the bilateral obligation to arbitrate. Hopkins asserts that because she was already employed and eligible for bonuses, no independent consideration exists. Further, Hopkins contends that BMS's promise to arbitrate is illusory and cannot suffice as consideration. We agree with BMS that a bilateral promise to arbitrate is sufficient consideration for a mutual arbitration agreement.

"When the validity of an agreement to arbitrate is challenged, courts apply ordinary state contract law." *McKee v. AT&T Corp.*, 164 Wn.2d 372, 383, 191 P.3d 845 (2008). Consideration is defined in Section 75 of *Restatement of Contracts* (Am. L. Inst. 1932), as "an act . . . bargained for and given in exchange for the promise." The Washington courts have long defined consideration as any

4

benefit to the promisor or detriment to the promisee. *See Harris v. Johnson*, 75 Wash. 291, 294-95, 134 P. 1048, 1050 (1913) (holding "any act which benefits the promisor or results to the loss or prejudice of the promisee is a sufficient consideration to support a promise to pay money"). "Independent consideration involves new promises or obligations previously not required of the parties." *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 834, 100 P.3d 791 (2004). "Independent consideration may include increased wages, a promotion, a bonus, a fixed term of employment, or perhaps access to protected information . . . [and] involves new promises or obligations previously not required of the parties." *Labriola*, 152 Wn.2d at 834 (internal citation omitted).

The arbitration agreement stated that consideration for current employees included continued employment, benefits related to employment, eligibility for annual bonuses, and the bilateral obligation to arbitrate. Our Supreme Court held that if the agreement makes no promises as to future employment or wages, no independent consideration is given to an existing employee. *Labriola*, 152 Wn.2d at 836. BMS's mutual arbitration agreement did not make any promises about Hopkins's continued employment or higher wages. Continued employment, benefits, and eligibility for annual bonuses are not sufficient consideration.

Further, addressing the bilateral obligation to arbitrate, " 'a traditional bilateral contract is formed by the exchange of reciprocal promises. The promise of each party is consideration supporting the promise of the other.' " *Duncan v. Alaska USA Fed. Credit Union, Inc.*, 148 Wn. App. 52, 74 199 P.3d 991 (2008)

5

(quoting *Govier v. N. Sound Bank*, 91 Wn. App. 493, 449, 957 P.2d 811 (1998)).

A promise is illusory when "the provisions of the supposed promise leave the

promisor's performance optional or entirely within the discretion, pleasure and

control of the promisor." *Interchange Assocs. v. Interchange, Inc.*, 16 Wn. App.

359, 360-61, 557 P.2d 357 (1976).

Hopkins asserts that the contract was illusory because performance was

in BMS's control. However, in the arbitration agreement, both Hopkins and BMS

agreed that "all disputes, claims, complaints, or controversies" against each other

will be arbitrated and they waived their right for a judge or jury to decide any

claims. The agreement is not illusory because it bound BMS to bring claims to

arbitration and the agreement does not provide BMS with the right to unilaterally

change the agreement. The agreement is a bilateral obligation and sufficient

consideration exists.

Unconscionability

Hopkins claims that the contract is not enforceable because it was

substantially and procedurally unconscionable. BMS contends that this court

should not consider the unconscionability issue because, though Hopkins raised

it in her responsive brief, the trial court did not consider unconscionability in its

decision.

Washington recognizes two types of unconscionability: substantive and

procedural.

1. <u>Substantive Unconscionability</u>

" 'Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh.' " *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 303, 103 P.3d 753 (2004) (quoting *Schroeder v. Fageol Motors, Inc*., 86 Wn.2d 256, 260, 544 P.2d 20 (1975)). Our Supreme Court has found that when both parties are required to arbitrate, the agreement is not substantively unconscionable. *See Adler v. Fred Lind Manor*, 153 Wn.2d 331, 352, 103 P.3d 773 (2004) (holding that the arbitration agreement was not substantively unconscionable because all employment disputes, "whether by employer or an employee," were subjected to binding arbitration).

Although the trial court did not explicitly include the unconscionability issue in its order to deny arbitration, our standard of review is de novo. Therefore, we will consider the issue of unconscionability in determining whether the arbitration agreement is enforceable. Evaluating the agreement substantively, the agreement bound both parties to arbitration.[1] Because the arbitration agreement was mutual and no terms heavily favor BMS, the agreement is not substantively unconscionable.

---

[1] Hopkins claims that BMS did not address unconscionability in its opening brief, thus this court should not consider BMS's unconscionability arguments. BMS asserts that under RAP 10.3(c), it can respond in its reply brief to issues raised in Hopkins's brief of respondent. Because Hopkins raises unconscionability in her brief of respondent, we agree with BMS that we can consider its unconscionability argument.

2. Procedural Unconscionability

Procedural unconscionability is "the lack of meaningful choice, considering all the circumstances surrounding the transaction including '[t]he manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print.' " *Zuver*, 153 Wn.2d at 303 (alterations in original) (internal quotation marks omitted) (quoting *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)). These factors should " 'not be applied mechanically without regard to whether in truth a meaningful choice existed.' " *Adler*, 153 Wn.2d at 350 (quoting *Nelson*, 127 Wn.2d at 131). This court must "look to the circumstances surrounding [the] transaction" to determine whether the employee had a meaningful choice. *Adler*, 153 Wn.2d at 347. An employee

> who asserts an arbitration agreement is procedurally
> unconscionable must show some evidence that the employer
> refused to respond to her questions or concerns, placed undue
> pressure on her to sign the agreement without providing her with a
> reasonable opportunity to consider its terms, and/or that the terms
> of the agreement were set forth in such a way that an average
> person could not understand them.

*Zuver*, 153 Wn.2d at 306-07. Our Supreme Court has recognized in similar circumstances, "[w]hen disputes exist as to the circumstances surrounding an agreement, we remand to the trial court to make additional findings." *Adler*, 153 Wn.2d at 350.

Here, the arbitration agreement's important terms were not hidden in a maze of fine print. The agreement was six pages long, in readable font, and not buried in an employee handbook. Therefore, we review the manner in which the

contract was entered and whether BMS placed undue pressure on Hopkins without providing her with a reasonable opportunity to consider its terms. Consistent with *Adler*, we conclude additional fact finding is needed to determine whether BMS placed undue pressure on Hopkins.

### a. Presentation of Arbitration Contract

BMS argues that although Hopkins claims she had questions about the agreement, her declaration does not identify the questions she asked BMS. Hopkins maintains that she had questions that went unanswered, and she wanted to keep her job, leaving her with no meaningful choice but to sign the agreement.

Hopkins's declaration stated that the Talent Acquisition team distributed the agreement. Hopkins had questions and concerns about the timing and legitimacy of the agreement, but the recruiting team told her they could not answer questions. Hopkins also stated that "[t]he Talent Acquisition team effectively conveyed that [Hopkins] and the other employees must either sign the document or resign." An employer threatening to fire an employee for refusing to sign an agreement after the employee asks questions supports that the agreement was procedurally unconscionable. *Adler*, 153 Wn.2d at 350. BMS's refusal to answer Hopkins's questions, and the fact that Hopkins was told that she could sign it or not sign it and it would become effective in 30 days, provides some evidence to support Hopkins's assertion that she did not have a meaningful choice.

9

### b. Undue Pressure and Reasonable Opportunity to Understand Terms

BMS asserts Hopkins had 30 days to sign the agreement and she was an experienced human resources professional who should have understood an arbitration agreement. BMS claims these facts favor that there was no undue pressure and Hopkins had a reasonable opportunity to understand the terms. However, Hopkins's declaration stated that she was confused by the agreement and wanted to keep her job.

On its face, 30 days to review an arbitration agreement does not favor procedural unconscionability. In *Zuver*, our Supreme Court found that fifteen days to sign an arbitration agreement was a reasonable opportunity for an employee to consider the terms of the agreement and raise questions or concerns with their employer. 153 Wn.2d at 306.

Although Hopkins had more time than *Zuver*, the facts here differ. Unlike *Zuver*, where Zuver did not consult an attorney or ask her employer questions before she signed, Hopkins asked questions about the agreement and BMS could not answer her questions, which Hopkins indicated left her confused. Although the arbitration agreement stated that the employee was given the opportunity to discuss the agreement with an attorney, it is unclear how any pressure Hopkins felt affected her understanding of any of the terms of the agreement. Additional fact finding is needed to determine whether BMS placed undue pressure on Hopkins, and what, if any, specific questions or concerns Hopkins raised to BMS.

Because we cannot make a determination regarding procedural unconscionability without further factual findings, we remand to the trial court for further proceedings consistent with this opinion.

_Smith, J._

WE CONCUR:

_Feldman, J._          _Chung, J._